William J. TWIGGER, Petitioner,

v.

George P. SCHULTZ, Secretary, Department of the Treasury, and Eugene T. Rossides, Assistant Secretary, Department of the Treasury.

No. 72–1851.

United States Court of Appeals,
Third Circuit.

Argued May 18, 1973.

Decided Aug. 21, 1973.

Dina G. McIntyre, McIntyre & McIntyre, Pittsburgh, Pa., for petitioner.

Harriett S. Shapiro, Walter H. Fleischer, U. S. Dept. of Justice, Washington, D. C., for respondents.

Before VAN DUSEN, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Petitioner Twigger, the holder of a customhouse broker's license issued under the Tariff Act of 1930, 19 U.S.C. § 1202 et seq., seeks review, pursuant to 19 U.S.C. § 1641(b), of an order of the Secretary of the Treasury suspending that license for five years. He has held the license since 1949. The Tariff Act authorizes the Secretary of the Treasury to prescribe rules and regulations gov-

erning the licensing of customhouse brokers, and regulations issued on that authority are found at 19 C.F.R. Part 111. On July 27, 1971, Twigger was served with a notice to show cause and specification of four charges:

(1) failing to promptly pay or otherwise account to clients for refunds received for them from the Government;

(2) failing to exercise due diligence in paying increased duties assessed in connection with various entries;

(3) knowingly giving false information to customs agents concerning payment of refunds to certain clients; and

(4) failing to maintain current records of accounts reflecting his financial transactions in an orderly and correct manner.

Prior to the service of the July 27, 1971 notice to show cause, Twigger had on April 16, 1971, been served with a notice of preliminary proceedings, signed by the District Director of Customs at Philadelphia, Pennsylvania, advising him that that office was considering formal proceedings looking to the revocation of his license. That notice of preliminary proceedings informed him that 5 U.S.C. §§ 554 and 558 would be applicable if formal proceedings were necessary.[1] The same District Director of Customs signed the July 27, 1971 notice to show cause. On November 17, 1971, the same District Director of Customs, acting as Hearing Officer for the Bureau of Customs, conducted a hearing on the charges. On March 27, 1972, the same District Director of Customs addressed to the Secretary of the Treasury Government's Findings and Conclusions and Recommendations. He concluded that Twigger was guilty of all four charges and recommended that his license be re-

---

1. Section 554 is that section of the Administrative Procedure Act governing adjudications required by statute to be determined on the record after an opportunity for an agency hearing. Section 558(c), governing suspension or revocation of licenses provides that no suspension or revocation of a license is lawful unless the agency affords notice of the facts and conduct which may warrant the action, and affords the licensee an opportunity to demonstrate or achieve compliance with all lawful requirements.

voked. The District Director forwarded the entire record to the Secretary. Eugene T. Rossides, Assistant Secretary of the Treasury, reviewed the agency record and in effect accepted the conclusions of the District Director on the charges. He suspended Twigger's license for five years rather than revoking it as the District Director had recommended. It is that decision which we review.

Twigger's petition for review makes these contentions:

I. That Charges (1)(2) and (4) should have been dismissed because the Bureau of Customs did not sustain its burden of proof on these charges. See 5 U.S.C. § 556(d).

II. That Charges (1) (2) and (4) should have been dismissed because the Bureau of Customs failed to comply with 5 U.S.C. § 558(c) in that it failed to give him an opportunity to achieve compliance with all lawful requirements.

III. That the entire administrative procedure was unlawful because the hearing officer also performed investigative and prosecutorial functions. This combination of functions, Twigger contends, violates 5 U.S.C. § 554(d)[2] and the due process clause of the fifth amendment.

Each of these contentions were made and rejected in the agency proceedings. *See* 19 U.S.C. § 1641(b).

The agency record establishes that Mr. Twigger's difficulties commenced with an audit by a special agent of the Bureau of Customs, made at the behest of the District Director. The agency regulations require that the special

agent submit his investigative report to the District Director and to the Commissioner of Customs. 19 C.F.R. § 111.55. The District Director reviews the report and recommends to the Commissioner of Customs, his supervisor, whether or not charges should be preferred. 19 C.F.R. § 111.56. If the Commissioner of Customs agrees that charges should be preferred, a statement of charges is prepared by the District Director, and reviewed by the Commissioner. 19 C.F.R. § 111.57. The District Director then prepares and serves a notice of preliminary proceedings, to which the broker may respond in writing or orally. 19 C.F.R. § 111.59. The District Director then makes a recommendation to the Commissioner, who decides whether to proceed with charges. 19 C.F.R. § 111.61. If the Commissioner directs him to proceed, the District Director serves the notice of hearing, 19 C.F.R. § 111.64, and presides at the hearing, 19 C.F.R. § 111.67. He thereafter certifies the entire record, with his recommended decision, to the Secretary of the Treasury, 19 C.F.R. § 111.69, who affords the parties an opportunity for additional submittals, 19 C.F.R. § 111.-70. The course outlines in the regulations was followed in Twigger's case.

Thus, although technically the decision to initiate formal revocation or suspension proceedings was made by the Commissioner of Customs, that decision was made as a result of an investigation initiated and reviewed by the District Director and after consideration of his recommendations. This investigating officer presided at the hearing and recommended a decision. And although technically the decision was made by an Assistant Secretary, it was made on the agency record compiled by the District Director and in the light of his recommended decision. Plainly, then, if Sec-

---

2. This section, derived from Section 5(c) of the Administrative Procedure Act, provides in part:

"An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not,

in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings."

tion 5(c) of the Administrative Procedure Act, 5 U.S.C. § 554(d) applies to customhouse broker's license revocation proceedings, it was violated. *See, e. g.,* Amos Treat & Co. v. S.E.C., 113 U.S. App.D.C. 100, 306 F.2d 260 (1962). The Secretary urges, however, that the outlined administrative procedure is provided for by 19 U.S.C. § 1641(b) and is exempt from the requirements of the Administrative Procedure Act. Section 7(a) of that Act, 5 U.S.C. § 556(b), provides in part:

> "This subchapter does not supercede the conduct of specified classes of proceedings, in whole or in part, by or before boards or other employees specifically provided for by or designated under statute."

This savings clause, the Secretary contends, makes § 5(c), 5 U.S.C. § 554(d), inapplicable to proceedings "provided for" by 19 U.S.C. § 1641(b).

▆▆ ▆▆ The Secretary misinterprets the savings clause, however, as an examination of the original text of the Administrative Procedure Act will disclose. That act, as originally adopted in Pub.L. No. 404, 60 Stat. 237 (1946) is set out in 4 K. Davis, Administrative Law Treatise 397 et seq. (1958) and 1946 U.S. Code Cong. & Ad. News, p. 1195, 79th Cong. 2d Sess. 288. It is organized in twelve sections. Section 5 deals with adjudication, and Section 5(c) deals with separation of functions. The prohibition against combining investigative or prosecuting functions with adjudicating functions appears in this subsection. Section 7 deals generically with hearings, both rule making hearings to which § 4 applies and adjudicatory hearings to which § 5 applies. Section 7(a) deals with presiding officers and provides in part:

> "There shall preside at the taking of evidence (1) the agency, (2) one or more members of the body which comprises the agency, or (3) one or more examiners appointed as provided in this Act; but nothing in this Act shall be deemed to supersede the conduct of specified classes of proceedings in whole or in part by or before boards or other officers specially provided for by or designated pursuant to statute."

5 U.S.C. § 556(b) is derived from § 7(a). Plainly the savings clause is intended to authorize continuance of the use of statutory boards or presiding officers who are neither "the agency", nor "one or more members of the agency", nor "one or more examiners appointed as provided in the Act". The clause cannot reasonably be construed, as the Secretary urges, as excepting entirely from the operation of the Administrative Procedure Act any statutory administrative procedure calling for a class of presiding officer other than one of the three classes specified in § 7(a). A more reasonable construction of the entire Act, which we adopt, is that there may be presiding officers other than those listed in § 7(a), but that the procedural safeguards of the Act, and specifically the separation of functions safeguard of § 5(c), apply to such presiding officers to the same extent as to those presiding officers listed in § 7(a).

▆▆ This construction is entirely consistent with 19 U.S.C. § 1641(b), which provides in relevant part:

> "The *appropriate officer of the customs* may at any time for good and sufficient reasons, serve notice in writing upon any customhouse broker so licensed to show cause why said license shall not be revoked or suspended, which notice shall be in the form of a statement specifically setting forth the ground of complaint. The *appropriate officer of customs* shall within ten days thereafter notify the customhouse broker in writing of a hearing to be held before him within five days upon said charges." (emphasis added).

The italicized language is, of course, ambiguous, since the *appropriate officer of the customs* (not elsewhere defined) might be one of the classes of presiding officers designated in Section 7(a) of

the Administrative Procedure Act. However, the italicized language only came into § 1641(b) in 1970. Pub.L. 91–271, Title III, § 301(jj), 84 Stat. 291, 1970 U.S.Code Cong. & Ad. News, p. 3188, 91st Cong. 2d Sess. 322, 342. Prior to 1970 and in 1946, when the Administrative Procedure Act was adopted, in place of "appropriate officer of the customs" appeared "collector or chief officer of the customs". It is clear that this was a statutory designation of a presiding officer other than "the agency", "one or more members of the agency", or "[an examiner] appointed as provided by the Act". Indeed, the Attorney General's Manual on the Administrative Procedure Act, 71–72, refers to 19 U.S.C. § 1641 as an example falling within the savings clause in § 7(a). The elimination, in 1970, of this specific designation in favor of the language "appropriate officer of the customs" was intended, as the Secretary urges, to implement his power to delegate responsibility for the functions of the Customs Service. See H.Rep. No. 91–1067, 91st Cong., 2d Sess. 31; cf. H. Rep. No. 91–267, 1970 U.S.Code Cong. & Ad. News, 91st Cong.2d Sess. 3188, 3218.

The Secretary urges further, however, that because he can now designate any appropriate officer of the customs as a presiding officer, he must be able to designate an investigating or prosecuting officer to preside over a hearing on a case that he investigated or initiated. No congressional intention to achieve this result can be found in the language or legislative history of the 1970 amendments to the Tariff Act. But, the Secretary urges, that result necessarily follows because prior to the 1970 amendments the "collector or chief officer of the customs" could investigate, prosecute, and adjudicate.

Herein lies a double fallacy. First, § 1641 placed on the "collector or chief officer of the customs" the duty of serving notice and of presiding. It did not, and in its present form does not, specify who shall perform the investigative and prosecutorial function. Second, while it is true that the savings clause in Section 7(a) of the Administrative Procedure Act continued the authority of the "collector or chief officer of the customs" to act as a presiding officer, § 5(c) expressly forbade him from being the investigative or prosecutorial officer at the same time, even assuming he had prior to 1946 been so designated.[3] Section 5(c) of the Act was violated in the instant proceedings.[4]

This case does not present the considerably narrower issue whether merely

---

3. See also Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950) where the Court held that the Administrative Procedure Act applied to deportation proceedings. The Court noted that one of the fundamental aims of the reform movement which culminated with passage of the A.P.A. was the desire "to curtail and change the practice of embodying in one person or agency the duties of prosecutor and judge." Id. at 41, 70 S.Ct. at 450. Consequently, the Court said that "[i]t is the plain duty of the courts . . . to construe this remedial legislation to eliminate so far as its text permits, the practices it condemns." The Government contended that the immigrant inspectors who presided at deportation hearings were "provided for by or designated pursuant to statute . . . " and hence exempted by § 7(a) from the A.P.A. The Court stated that the Immigration Act, 39 Stat. 886, only gave the inspectors prosecutorial functions. Their adjudicatory functions were derived solely from the regulations. See id. at 45, 51–52, 70 S.Ct. 445. Consequently the Court held that the A.P.A. applied.

Shortly thereafter, in the Supplemental Appropriations Act of 1951, Congress specially excluded deportation or exclusion hearings from the provisions of Sections 5, 7 and 8 of the A.P.A.

4. Our conclusion that there was a violation of the Administrative Procedure Act makes it unnecessary to decide whether the combination of investigative and adjudicative functions, where the adjudication was only a recommended decision, also violated the due process clause of the fifth amendment. But see NLRB v. Botany Worsted Mills, 133 F.2d 876, 882 (3d Cir.), cert. denied, 319 U.S. 751, 63 S.Ct. 1164, 87 L.Ed. 1705 (1943); 2 K. Davis, Administrative Law Treatise, § 13.02 (Supp.1965); Compare these with Amos Treat & Co. v. S.E.C., supra.

authorizing the filing of charges disqualifies an agency official from participating in adjudication. *See, e. g.,* 2 K. Davis, Administrative Law Treatise § 13.10 at pp. 237–39 (1958), arguing that merely authorizing the filing of a complaint does not taint the adjudicatory function. Whether we would agree with Professor Davis need not here be decided, because on this record we are dealing with the more fundamental taint—one expressly prohibited by § 5(c)—of combining the functions of investigator and adjudicator. The possibility of improper taint from such dual functions is substantial in this case since the adjudicating officer reviewed the investigative reports of the special agent, made at his direction before recommending prosecution. We simply do not know what information was in those reports that does not appear in the record before us, and that did not appear in the record reviewed by the Assistant Secretary when he accepted the District Director's recommended decision. We do know that, whatever may have been in the investigative reports, the petitioner had no opportunity to offer evidence in opposition or explanation. *See* In re Murchison, 349 U.S. 133, 138, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

■ The suspicion that such taint may have occurred here is reinforced by our review of the evidence bearing upon Charges (1) (2) and (4). As we pointed out above, petitioner challenges the sufficiency of the Government's evidence on these charges. Since we have already determined that procedural irregularities tainted the administrative proceedings, it might arguably suffice merely to remand. But the procedural defects to which we have referred in no way prejudiced the agency's opportunity to present a prima facie case. It seems hardly appropriate that the agency's own procedural deficiencies should afford it an opportunity to adduce additional evidence. The scope of review set forth in the statute suggests, we think, that we can without remand dispose of

those counts as to which the agency failed to prove a prima facie case. 19 U.S.C. § 1641(b) provides in relevant part:

"Upon the filing of [a] petition [the Court of Appeals] shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part. . . . The finding of the Secretary of the Treasury as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the appropriate officer of customs, the court may order such additional evidence to be taken before the appropriate officer of customs and to be adduced upon the hearing in such manner and upon such terms as to the court may seem proper."

No party has applied for leave to adduce additional evidence, and no reasonable grounds appear for the failure, if any, to adduce available additional evidence before the District Director. It is appropriate, therefore, to rule upon petitioner's challenges to the sufficiency of the agency's proofs.

■ Count (1) charges that Twigger "failed to promptly pay or otherwise account to his clients for one or more . . . refunds, in violation of section 31.10(*1*), Customs Regulations, as amended (19 CFR 31.10(*l*), revised January 1, 1968), and for section 111.29, Customs Regulations, as amended (19 CFR 111.29, redesignated June 11, 1970)." At the hearing, Twigger admitted that he did not promptly pay over. The Government offered no evidence that he did not otherwise account. The Secretary's brief urges that . . . "[t]he regulation requires either payment or disclosure to the client of the amount due and its disposition, so that

the client may know the disposition of the money received on his behalf." Respondent's Brief at 18. This seems a correct interpretation of 19 C.F.R. §§ 31.10 (1), 31.29 (now designated 19 C.F.R. § 111.29). A customhouse broker may collect refunds and remit, or may keep a mutual account with his regular customers. Twigger did not introduce any evidence that he promptly notified clients of the status of their accounts. But the proponent of the suspension order had the burden of proof. 5 U.S.C. § 556(d). There is simply no proof that Twigger failed to account to his clients, and in the absence of such proof the charge should have been dismissed.

Count (2) charges that Twigger, "as importer of record, failed to exercise due diligence in the payment of increased duties assessed in one or more . . . transactions . . . in violation of sections 31.10(l) and (p), Customs Regulations, as amended (19 CFR 31.10(1) and (p), revised January 1, 1968), and/or section 111.29, Customs Regulations, as amended (19 CFR 111.-29, redesignated June 1, 1970)." At the hearing Twigger stipulated that the increased duties referred to were not promptly paid. He contended, however, that his duty was to pay over to the Government all sums "received" from his clients, not all sums owed by them. The Government offered no evidence that any of the increased duties referred to in Count (2) had been received by Twigger. The Assistant Secretary held that the failure to pay was a violation of 19 C.F.R. §§ 31.10(1) and (p) even though the clients had not paid Twigger. Granting that we, as a reviewing court must ordinarily grant great deference to an administrator's interpretation of his own regulations, we think that the Assistant Secretary's interpretation cannot here be relied upon to sustain the charge. 19 C.F.R. § 31.10(1) provides:

"Each customhouse broker shall promptly *pay over* to the Government when due *all sums received* for the payment of any duty, tax or debt or other obligation owing to the Government. . . ." (emphasis added).

19 C.F.R. § 31.10(p) provides:

"Each customhouse broker shall exercise due diligence in answering correspondence, in making financial settlements, and in preparing, or assisting in the preparation and filing of, documents relating to any matter handled by him as a customhouse broker."

Count (2) charged specific violations of these regulations. The only evidence relied upon by the Assistant Secretary as establishing the violation was the stipulation by Twigger's counsel that the increased duties had not been paid. Clearly counsel could not have anticipated that such a stipulation established a violation of either section. The Assistant Secretary cites no other authority for his assertion that "[a]s importer of record Respondent is responsible for payment of duties when they become due notwithstanding the timing of the payment by the broker's client to the broker." If there is some other regulation establishing such a customhouse broker's responsibility, its violation was not charged in Count (2). No evidence supports the charged violation of §§ 31.-10(1) and (p), and that charge should have been dismissed.

Count (4), as amended at the hearing, charges that Twigger,

"in violation of section 31.9(a) Customs Regulations, as amended (19 CFR 31.9(a) revised January 1, 1968), and/or section 111.21, Customs Regulations, as amended (19 CFR 111.21, redesignated June 11, 1970), did not maintain correctly and in an orderly, itemized manner, and did not keep current records of account reflecting all his financial transactions as a Customhouse Broker, in the following regards:

1. No cash receipts journal, disbursements journal or general ledger was maintained by him.
  . . .

2. Journals patterned after CF 3079 reflecting his transactions back to 1965 were incompletely recorded, particularly with respect to refund and supplemental duty data.

3. The only cash receipts records maintained by him . . . consist solely of daily bank deposit receipts.

4. The only disbursements records maintained by him . . . consist of check stubs."

The regulations referred to in Count (4) do not specify what books or records must be maintained by a customhouse broker, or on what method of accounting he must conduct his business. They merely require that he maintain correctly and in an orderly itemized manner, and keep current, records of account reflecting all his financial transactions as a customhouse broker. Obviously a customhouse broker, engaged in a service business analogous to the practice of a profession, does not maintain an inventory. It seems entirely appropriate that he account for his transactions on a cash receipts and disbursements basis, as do most professional service organizations, and the regulations do not suggest otherwise. At the hearing, counsel for Twigger stipulated the factual allegations of paragraphs 1–4 of Count (4) quoted above.[5] The Government offered no evidence that the daily bank deposit receipts did not reflect all receipts and their source. Nor did it offer any evidence that the retained check stubs did not reflect all disbursements and their purpose. On this record we must assume, therefore, that Twigger maintained complete records of original entry on his receipts and disbursements as a customhouse broker, but did not maintain secondary accounting records. A certified public accountant testified that "[u]p until this day, we have had no difficulty in searching any of the source documents that we would need." This testimony is uncontradicted and unimpeached.

No doubt the Secretary could have required by regulation that the records of a customhouse broker shall be kept in a specified manner, including secondary accounting records as well as original entries. He did not do so. Instead, he issued a general regulation that the broker keep his records in an orderly itemized current manner, reflecting all his financial transactions as a customhouse broker. On this record we must assume that all receipts were currently recorded on the daily bank deposit receipts, that all disbursements were recorded on the check stubs, and, in view of the amendment to the charges, that the invoices currently and orderly recorded accounts receivable. The agency's case on Count (4) depends, then, solely upon the stipulated failure to maintain a cash receipts journal other than the retained daily deposit receipts, a disbursements journal other than the retained check stubs, or a general ledger, and on the stipulation that a journal patterned after CF 3079 was incompletely recorded. The difficulty with that case is that the regulations charged to have been violated do not specify the maintenance of such records. The stipulation by counsel as to the facts alleged in paragraphs 1–4 of Count (4) cannot be construed, as the Assistant Secretary construed them, as an admission of the sufficiency of the Government's case on Count (4). Counsel maintained throughout the hearing that the records maintained were in compliance with the regulations. On this record we agree. The charge in Count (4) should have been dismissed.

Petitioner advances his contention as to noncompliance with 5 U.S.C. § 558(c) only with respect to Counts (1) (2) and (4). Since we have disposed of those counts, there is no occasion to consider whether the agency complied with § 558(c).

---

5. The Government withdrew a fifth allegation respecting accounts receivable records.

The order of the Assistant Secretary suspending petitioner's customhouse broker's license for five years shall be set aside. The judgment setting aside that order, insofar as it is based upon Counts (1) (2) and (4) of the charges shall be with prejudice. The judgment setting aside that order, insofar as it is based upon Count (3), is without prejudice to further proceedings before an appropriate hearing officer in compliance with this opinion on that count, and without prejudice to a reconsideration by the Secretary of the appropriate sanction in view of our ruling on Counts (1) (2) and (4) should Count (3) be proved in such a hearing.

VAN DUSEN, Circuit Judge (dissenting):

I concur in the majority's holding that the order suspending petitioner's customhouse broker's license for five years should be set aside and dissent only from that part of the judgment in favor of petitioner on Count (4), which dismisses that count with prejudice. I believe the judgment in favor of petitioner should be without prejudice to further proceedings before an appropriate hearing officer on Counts (3) and (4). There was substantial evidence in the record from which a fact finder could have found that petitioner did not "maintain correctly and in orderly itemized manner, and keep current, records of account reflecting all his financial transactions as a customhouse broker," as required by Customs Regulation 31.-9(a).[1] The evidence conclusively showed that the information on the journal patterned after C.F.R. 3079 was incompletely recorded, as conceded at page 16 of the majority opinion. Further, the record contains testimony that the petitioner gave investigating customs agents

inaccurate information on refunds in 1967–1968, so that this is not a case of harassing petitioner without cause (22a–26a of appellee's Appendix).

---

1. See 203a (Petitioner testified that the system of bookkeeping was adequate in 1950. "But as time went on it became more and more and more inadequate."), 129a–130a, 158a (payments were made for simplicity of bookkeeping when there was no obligation to pay), 201a–206a.