**GROLIER INCORPORATED, a corporation and American Peoples Press, etc., et al., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 78–2159.**

United States Court of Appeals, Ninth Circuit.

Jan. 24, 1980.

As Amended on Denial of Rehearing April 17, 1980.

Frederick P. Furth, Furth, Fahrner & Wong, San Francisco, Cal., argued, for petitioners; Thomas R. Fahrner, San Francisco, Cal., on brief.

Jerold D. Cummins, F.T.C., Washington, D. C., argued, for respondent; Michael N. Sohn, Washington, D. C., on brief.

Before WALLACE and ANDERSON, Circuit Judges, and SOLOMON,* District Judge.

## OPINION

WALLACE, Circuit Judge:

On March 13, 1978, the Federal Trade Commission (FTC) entered a final cease and desist order against Grolier, Incorporated and 14 of its wholly-owned subsidiaries (Grolier) designed to correct Grolier's adjudged violations of 15 U.S.C. § 45. By this

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

appeal, pursuant to 15 U.S.C. § 45, Grolier seeks to have that order set aside because of alleged procedural and substantive errors. We set aside the order and remand this case to the FTC for further consideration.

I

Grolier is engaged in the door-to-door and mail order sale of encyclopedias and related reference publications. On March 9, 1972, the FTC issued an administrative complaint charging Grolier with unfair methods of competition and unfair or deceptive acts or practices in connection with its sales activities, pricing representations, promotion techniques, recruitment practices, debt collection, and mail order operations. The case was initially assigned to an Administrative Law Judge (ALJ), who, after presiding at hearings throughout 1973 and 1974, retired from federal service before rendering a decision. A second ALJ was then assigned to complete the case, but he promptly recused himself. In February 1975, Theodore P. von Brand, the third ALJ assigned to the case, began hearings and decided to recall many of the witnesses who had previously testified in the proceedings. In January 1976, four months before completion of the hearings, ALJ von Brand informed the parties that he had served as an attorney-advisor to former FTC Commissioner A. Everett MacIntyre from 1963 through January 1971, during which period Grolier was intermittently investigated and charged by the FTC. Records available to Grolier indicated that Commissioner MacIntyre attended at least one meeting between it and representatives of the FTC.

Upon learning of ALJ von Brand's advisory responsibilities during the eight-year period, Grolier requested that the judge disqualify himself from further participation in the proceedings. The judge denied the request, stating that he did not recall working on matters involving Grolier while serving as legal advisor to the Commissioner. Grolier then filed with the FTC a formal motion for disqualification and removal of ALJ von Brand, at the same time request-ing the FTC to permit discovery of specified FTC records which would have tended to show the nature and extent of the judge's contact with the Grolier case. The FTC denied both the motion for disqualification and the requested discovery.

After hearing a substantial part of the case *de novo*, ALJ von Brand concluded the hearings in May 1976 and issued his decision and recommended cease and desist order in October 1976. On appeal, the FTC adopted in large part the decision and order of ALJ von Brand and reaffirmed denial of the disqualification motion and request for discovery.

II

Grolier argued before the FTC, and now argues before us, that failure to disqualify ALJ von Brand from the case violated both section 554(d) of the Administrative Procedure Act (APA), 5 U.S.C. § 554(d), and the Due Process guarantee of the Fifth Amendment. Grolier also claims that the FTC erred in denying the requested discovery. Upon considering the 554(d) claim and the denial of discovery, we remand the case to the FTC for further consideration. Consequently, we do not here reach Grolier's claims of due process violation and of error in the cease and desist order.

A. *Section 554(d)*

Most federal administrative agencies combine within one organization a number of responsibilities that our system of government normally seeks to separate. They formulate policy as does the legislature, administer policy as does the executive, and adjudicate controversies as does the judiciary. They investigate infractions of statutes or regulations, prosecute those against whom their investigation has established a prima facie case, and judge the case they themselves have presented. W. Gellhorn & C. Byse, Administrative Law, Cases and Comments 1035 (1974). Nowhere is this combination of functions more apparent than in the FTC.

[T]he Federal Trade Commission receives a charge, ordinarily filed by a consumer

or a competitor, that a business concern is engaging in an unfair trade practice. The charge is investigated by the Commission's personnel. If the Commission's investigator digs up enough evidence to show the charge to be substantial, a complaint issues in the Commission's name. An attorney employed by the Commission presents evidence (or "prosecutes") in support of the complaint at a hearing before an administrative law judge named by the Commission. The Commission's designated judge considers whether the Commission's attorney has proved the soundness of the Commission's case against the respondent. And in the end the Commission, aided by its staff, decides whether or not the respondent has committed the unfair trade practice of which the Commission had complained.

*Id.* at 1034–35.

In an effort to minimize any unfairness caused by this consolidation of responsibilities, the APA mandates an internal separation of the investigatory-prosecutorial functions from adjudicative responsibilities. The relevant portion of APA § 554(d) states:

1. The full text of the section 554 separation of functions provision states:

(d) The employee who presides at the reception of evidence pursuant to section 556 of this title shall make the recommended decision or initial decision required by section 557 of this title, unless he becomes unavailable to the agency. Except to the extent required for the disposition of ex parte matters as authorized by law, such an employee may not—

(1) consult a person or party on a fact in issue, unless on notice and opportunity for all parties to participate; or

(2) be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency.

An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings. This subsection does not apply—

An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title . . ..

5 U.S.C. § 554(d).[1] To violate section 554(d), then, an agency employee must, in the same or a factually related case, (1) engage in "investigative or prosecuting functions,"[2] and (2) "participate or advise in the decision." Neither Grolier nor the FTC contests the fact that ALJ von Brand's actions meet the latter of these two requirements. The point of their disagreement, and the issue which we must resolve, is whether ALJ von Brand meets the first requirement, i. e., whether his employment as an attorney-advisor to Commissioner MacIntyre constituted "investigative or prosecuting functions" in this or a factually related case.

Grolier contends that attorney-advisors come within the meaning of "investigative or prosecuting functions" because they are chargeable with knowledge of all matters that come before the FTC during their em-

(A) in determining applications for initial licenses;

(B) to proceedings involving the validity or application of rates, facilities, or practices of public utilities or carriers; or

(C) to the agency or a member or members of the body comprising the agency.

5 U.S.C. § 554(d).

2. Despite the statutory language that an employee is precluded from participating in the adjudication of a case only when he is "engaged" in the investigation or prosecution of that case, we conclude that Congress did not intend to limit the separation of functions to those persons contemporaneously performing both. Such a reading would permit an agency employee to become immersed in the investigation of a case, resign from the investigative position, and then be appointed judge to render the decision. Such was not the intention of Congress. *See* S.Rep. No. 572, 79th Cong., 1st Sess. 18 (1945), *reprinted in* Administrative Procedure Act—Legislative History, 79th Congress 1944–46, at 204 (1946); H.R.Rep. No. 1980, 79th Cong., 1st Sess. 27 (1946); *reprinted in* Administrative Procedure Act—Legislative History, 79th Congress 1944–46, at 262 (1946).

ployment. Grolier urges that Congress intended to prevent adjudication by persons previously exposed to *ex parte* information like that developed by the FTC in its investigative and prosecutive activities. In other words, because ALJ von Brand is presumed to have knowledge of every FTC investigation conducted during his eight-year tenure as an attorney-advisor, Grolier would disqualify him from participating in the adjudication of any case investigated during that period, even those with which he had no contact.

The FTC's argument is equally extreme. It contends that because Congress was principally concerned with preventing adjudication by those who have developed, through investigative or prosecutorial zeal, a "will to win" that is incompatible with objective adjudication, section 554(d) applies only to those employed in the actual investigative and prosecutive branches of the FTC. Since attorney-advisors are employed in neither of those branches, the FTC contends that ALJ von Brand is not disqualified by section 554(d). Under such analysis, even an attorney-advisor who involves himself in a case to the point of losing all objectivity could later, without violating the APA, render judgment in that case simply because he was never employed in certain branches of the FTC organization. Neither Grolier's nor the FTC's position is convincing. To determine the scope of section 554(d), we must examine the legislative history of the APA.

In 1939 President Roosevelt "directed the Attorney General to name 'a committee of eminent lawyers, jurists, scholars, and administrators to review the entire administrative process in the various departments of the executive Government and to recommend improvements, including the suggestion of any needed legislation.' " *Wong*

*Yang Sung v. McGrath*, 339 U.S. 33, 38–39, 70 S.Ct. 445, 449, 94 L.Ed. 616, *modified*, 339 U.S. 908, 70 S.Ct. 564, 94 L.Ed. 1336 (1950). The report of this committee became the blueprint for the APA and is "still a primary source of information about the federal administrative process." K. Davis, Administrative Law and Government 13 (2d ed. 1975); *e. g., Wong Yang Sung v. McGrath, supra*, 339 U.S. at 44, 70 S.Ct. 445. In responding to the much criticized union of the investigative, prosecutive and adjudicative functions within agencies, the committee report suggested the creation of hearing commissioners, now administrative law judges, as a "separate unit in each agency's organization" with "no functions other than those of presiding at hearings . . . and . . . deciding the cases that fall within the agency's jurisdiction." Report of the Attorney General's Committee on Administrative Procedure 50 (1941), S.Doc. No. 8, 77th Cong., 1st Sess. 50 (1941) (footnote omitted). Two reasons crucial to our decision were given for this recommended separation: "the investigators, if allowed to participate [in adjudication], would be likely to interpolate facts and information discovered by them ex parte and not adduced at the hearing, where the testimony is sworn and subject to cross-examination and rebuttal"; and "[a] man who has buried himself in one side of an issue is disabled from bringing to its decision that dispassionate judgment which Anglo-American tradition demands of officials who decide questions." *Id.* at 56.

It is evident that Congress intended to address these two concerns by separating investigative-prosecuting functions from adjudicative functions. Section 554(d)(1)[3] expressly forbids ALJ acquisition of *ex parte* information. This provision, along with 5 U.S.C. § 557(d) (1),[4] illustrates Con-

---

**3.** *See* note 1, *supra*.

**4.** "Section 557(d) (1) states in part:

"(d) (1) In any agency proceeding which is subject to subsection (a) of this section, except to the extent required for the disposition of ex parte matters as authorized by law—

"(A) no interested person outside the agency shall make or knowingly cause to be

made to any member of the body comprising the agency, administrative law judge, or other employee who is or may reasonably be expected to be involved in the decisional process of the proceeding, an ex parte communication relevant to the merits of the proceeding;

gress' concern over possible use in the deci-
sional process of information received out-
side of the controlled adjudicative setting.
Congress' second concern, precluding from
adjudicative functions those who have de-
veloped a "will to win," is evident in the
legislative history of the APA. In explain-
ing its adoption of language substantially
the same as that currently contained in
section 554(d), the Senate Judiciary Com-
mittee specifically adopted the majority
recommendation of the Attorney General's
Committee, expressing concern over the
"man who has buried himself in one side of
an issue." Senate Judiciary Committee
Print, 79th Cong., 1st Sess. 15 (1945), *re-
printed in* Administrative Procedure Act-
Legislative History, 79th Congress 1944–46,
at 25 (1946) (hereinafter "APA Legislative
History").

 Regarding the APA, the Supreme
Court has stated that "it would be a dis-
service to our form of government and to
the administrative process itself if the
courts should fail, so far as the terms of the
Act warrant, to give effect to its remedial
purposes where the evils it was aimed at
appear." *Wong Yang Sung v. McGrath,*
*supra,* 339 U.S. at 41, 70 S.Ct. at 450. We
conclude that by forbidding adjudication by
persons "engaged in the performance of
investigative or prosecuting functions,"
Congress intended to preclude from deci-
sionmaking in a particular case not only
individuals with the title of "investigator"
or "prosecutor," but all persons who had, in
that or a factually related case, been in-
volved with *ex parte* information, or who
had developed, by prior involvement with
the case, a "will to win." An attorney-ad-
visor may, therefore, come within the prohi-
bition of section 554(d) if he has had such

involvement. The FTC decision to the con-
trary was error.[5]

The FTC argues, however, that even if
section 554(d) has the broad meaning that
we conclude it does, ALJ von Brand and all
other former attorney-advisors are exempt-
ed from the 554(d) prohibition by APA lan-
guage immunizing "the agency or a mem-
ber or members of the body comprising the
agency." 5 U.S.C. § 554(d)(2)(C). It con-
tends that the necessarily close relationship
between attorney-advisors and agency
members requires that an advisor be ex-
tended privileges coequal with his commis-
sion member's responsibilities so that he
may freely advise the member on the full
range of problems considered by the FTC.
This argument would be compelling if made
on behalf of an attorney-advisor or other
FTC employee who must counsel the mem-
ber at both the investigative and decision-
making stages of a case. But ALJ von
Brand is no longer an attorney-advisor; his
ALJ position does not necessitate involve-
ment in the adjudication of this particular
case. The exemption from 554(d) was cre-
ated only for those positions in which in-
volvement in all phases of a case is dictated
"by the very nature of administrative agen-
cies, where the same authority is responsi-
ble for both the investigation-prosecution
and the hearing and decision of cases."
S.Rep. No. 572, 79th Cong., 1st Sess. 18
(1945), *reprinted in* APA Legislative Histo-
ry at 204; H.R.Rep. No. 1980, 79th Cong.,
1st Sess. 27 (1946), *reprinted in* APA Legis-
lative History at 262; *see Amos Treat & Co.*
*v. S. E. C.,* 113 U.S.App.D.C. 100, 106, 107,
306 F.2d 260, 266–67 (D.C.Cir. 1962). We
reject the argument that ALJ von Brand is
exempted from the 554(d) separation of
functions.

"(B) no member of the body comprising
the agency, adminstrative law judge, or other
employee who is or may reasonably be ex-
pected to be involved in the decisional proc-
ess of the proceeding, shall make or know-
ingly cause to be made to any interested
person outside the agency an ex parte com-
munication relevant to the merits of the pro-
ceeding;

" . . ."

5. In concluding that former attorney-advisors
are not within the proscription of 554(d), the
FTC focused solely upon the congressional de-
sire to prevent adjudication by those who had
developed a "will to win." *In re Grolier, Inc.,*
87 F.T.C. 179, 180 (1976). With such a narrow
focus, their conclusion was not unreasonable.
It was erroneous, however, because it over-
looked the equally important congressional de-
sire to prevent adjudicative interpolation of *ex*
*parte* facts.

As mentioned earlier, Grolier contends that ALJ von Brand is chargeable with knowledge of all investigative and prosecutorial activities undertaken by the FTC during his tenure as an attorney-advisor. Therefore, it argues, actual possession of *ex parte* information in the Grolier case need not be shown; ALJ von Brand is disqualified *per se* by virtue of his former position. The authority cited in support of this argument is not persuasive.[6] Moreover, we can find no court that has adopted a *per se* approach to disqualification under 554(d). On the contrary, those courts which have considered the question have focused not upon the former position of the challenged adjudicator, but upon his actual involvement, while in that former position, with the case he is now deciding. *See Au Yi Lau v. I. N. S.*, 181 U.S.App.D.C. 99, 106, 555 F.2d 1036, 1043 (D.C.Cir. 1977); *Cisternas-Estay v. I. N. S.*, 531 F.2d 155, 158, 160–61 (3d Cir.), *cert. denied*, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1976); *Twigger v. Schultz*, 484 F.2d 856, 858, 861 (3d Cir. 1973); *R. A. Holman & Co. v. S. E. C.*, 366 F.2d 446, 451–54 (2d Cir. 1966), *modified*, 377 F.2d 665, *cert. denied*, 389 U.S. 991, 88 S.Ct. 473, 19 L.Ed.2d 482 (1967); *Amos Treat & Co. v. S. E. C., supra*, 306 F.2d at 265–67. We conclude, therefore, that under 554(d), attorney-advisors are "precluded only from participating in the adjudication of cases in which they have actually performed such ["investigative and prosecuting"] functions, and in 'factually related' cases." *Au Yi Lau v. I. N. S., supra*, 181 U.S.App.D.C. at 106, 555 F.2d at 1043. For purposes of disqualification, they are not chargeable with involvement in all cases that were before the agency during their advisorship.

In resolving the question of ALJ von Brand's qualification to adjudicate the Grolier case, then, we must look to his activity during the time that he served as attorney-advisor to Commissioner MacIntyre. If he was sufficiently involved with the case to be apprised of *ex parte* information, 554(d) requires his disqualification. His current inability to recall that information is irrelevant. Once an attorney-advisor is shown to have been "engaged in the performance of investigative or prosecuting functions" through prior acquaintance with *ex parte* information, 554(d) says he "may not . . . participate or advise in the decision . . . ." of the case. It does not condition this disqualification upon recollection of the *ex parte* facts.

Grolier has the burden of showing ALJ von Brand's prior acquaintance with *ex parte* information. *R. A. Holman & Co. v. S. E. C., supra*, 366 F.2d at 452; *S. E. C. v. R. A. Holman & Co.*, 116 U.S.App.D.C. 279, 282, 323 F.2d 284, 287 (D.C. Cir.), *cert. denied*, 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963). Where, as here, the court is presented with no evidence of actual involvement in the Grolier case by then attorney-advisor von Brand, the normal course of action would be to refuse to disqualify him. In this case, however, Grolier attempted to require such evidence by requesting discovery of specified FTC documents. If discovery was wrongly denied, Grolier was improperly hindered in its efforts to meet its burden of proof and failure to do so should not weigh against it. We therefore consider the propriety of the FTC's refusal to permit discovery.

The position urged by Grolier would also produce an unnecessarily impractical approach to the problem of separation of functions. ALJ von Brand, who served as an attorney-advisor from 1963 to 1971, would be disqualified from judging any case that was investigated or prosecuted by the FTC during that eight-year period. We need not adopt such a restrictive approach in order to comply with the mandate of section 554(d).

6. Grolier seeks support from FTC decisions denying former attorney-advisors the right to practice before the FTC in a particular case. *E. g., National Talent Association, Inc.*, [1976–79 Transfer Binder] Trade Reg.Rep. (CCH) FTC Complaints & Orders ¶ 21,366 (1977). Such decisions are not authority for a *per se* approach in the altogether different area of disqualification. Moreover, they are no longer followed by the FTC even in cases where they have precedential value. Letter from the FTC to Robert Wald (Aug. 16, 1978).

B. *Discovery Request*

██ The FTC's denial of Grolier's request for discovery was the direct result of its erroneous conclusion that attorney-advisors did not perform "investigative or prosecuting functions" within the meaning of 554(d). After making that conclusion it stated: "Because we do not believe that Judge von Brand would be subject to disqualification even if it could be shown that he advised Commissioner MacIntyre on matters pertaining to these respondents, the discovery requests are denied." *In re Grolier, Inc.*, 87 F.T.C. 179, 181 (1976). From the discussion in Part A of this opinion, it is evident that ALJ von Brand's prior involvement in the case is not irrelevant as the FTC supposed; rather, it is the very crux of the disqualification issue.

We conclude, therefore, that the case should be remanded to the FTC for reconsideration of the discovery denial and, in light of the results of that reconsideration, the disqualification motion. We do not say that the FTC must grant discovery; but we do say that a flat refusal to disclose anything at all about ALJ von Brand's prior involvement in the Grolier case is error. The FTC must produce sufficient information to permit it and a reviewing court, to make an accurate 554(d) determination. The need for such response has been recognized by the Second Circuit:

> If the Commission had refused to divulge anything at all about the nature of the preliminary investigation into petitioner's activities, and Woodside's role in that investigation, this would be an unfair restriction of an inquiry into possible disqualification and, if permitted, would render the *Treat* decision [which focused on the actual investigative involvement of the challenged adjudicator] a meaningless admonition, easily circumvented.

*R. A. Holman & Co. v. S. E. C., supra*, 366 F.2d at 453; *see San Francisco Mining Exchange v. S. E. C.*, 378 F.2d 162, 170–71 (9th Cir. 1967). While the FTC may grant discovery, it may, initially, respond in the form of affidavits as to the existence and extent of ALJ von Brand's involvement with the Grolier case while he served as attorney-advisor. *E. g., Au Yi Lau v. I. N. S., supra*, 181 U.S.App.D.C. at 106, 555 F.2d at 1043; *Adolph Coors Co. v. FTC*, 497 F.2d 1178, 1189 (10th Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975); *R. A. Holman & Co. v. S. E. C., supra*, 366 F.2d at 453–54. If these sworn statements adequately disclose the existence or nonexistence of ALJ von Brand's involvement in prior Grolier matters, Grolier, who has the burden of proof on the disqualification issue, may rightfully be "obliged either to offer evidence contradicting the sworn statements of the [FTC], or to point out the inadequacy and inconsistency, if any, in the sworn statements" before it will be permitted to subpoena FTC records. *R. A. Holman & Co. v. S. E. C., supra*, 366 F.2d at 454.

### III

After proceedings pursuant to our remand, it may be unnecessary for us to reach Grolier's constitutional challenge to the FTC procedures employed in this case. If, after the discovery issue has been properly considered by the FTC, ALJ von Brand is disqualified, the issue will become moot. If not, it may be that a more adequate record will be developed for any future determination of the due process claim. At this juncture, therefore, we do not reach that contention. Similarly, it would be inappropriate for us to consider now the merits of the appeal.

ORDER SET ASIDE AND CAUSE REMANDED.