**HERMAN B. TAYLOR CONSTRUCTION CO., Appellant,**

v.

**David J. BARRAM, Administrator, General Services Administration, Appellee.**

No. 99–1028.

United States Court of Appeals, Federal Circuit.

Decided Feb. 15, 2000.

George R. Diaz–Arrastia, Schirrmeister Ajamie, L.L.P., of Houston, Texas, argued for appellant.

Deborah P. Samuel, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Assistant Director. Of counsel on the brief was Sharon J. Chen, Assistant General Counsel, Office of General Counsel, U.S. General Services Administration, of Washington, DC.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The General Services Administration Board of Contract Appeals ("Board") terminated a contract for default because it determined that the contractor had violated the labor standards provisions of the contract. The Board concluded that the United States Department of Labor, which had sole authority to determine compliance vel non with those requirements, had in fact found noncompliance. We hold that the Labor Department had not so found and therefore reverse the Board's affirmance of the default termination.

## I

A. In 1992, the appellant Herman B. Taylor Construction Company ("Taylor") entered into a contract for extensive renovations of a government building. The contract required Taylor to comply with several labor standards provisions, including one tracking the Davis–Bacon Act standards, which provided:

> All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week ... the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof.

Federal Acquisition Regulations, 48 C.F.R. § 52.222–6.

The contract also incorporated certain requirements of the Contract Work Hours and Safety Standards Act, 48 C.F.R. § 52.222–4, governing overtime pay. The parties and the government agencies have applied the same governing principles under the two statutes and we do likewise. We sometimes refer to these provisions collectively as the "labor provisions."

The contract provided that violation of these labor provisions was a ground for termination of the contract. *See* 29 C.F.R. § 5.12.

The contract further provided that any dispute concerning these labor provisions was to be resolved by the Labor Department:

> The United States Department of Labor has set forth in 29 C.F.R. Parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor ... and the contracting agency, the U.S.

Department of Labor, or the employees or their representatives.

B. Early in 1994 the Labor Department began an investigation of Taylor's compliance with the contract's labor provisions. In June 1994 a Labor Department investigator informed the General Services Administration ("GSA") that he believed Taylor had violated the Davis–Bacon Act. Five months later, the Labor Department reported to GSA the results of its investigation: "Our investigation revealed that [Taylor] did not pay the proper prevailing wage rate and fringe benefits; misclassified employees; did not pay proper overtime compensation; and did not maintain accurate time and payroll records. Our investigation disclosed [more than $67,000] in ... back wages due [twenty-one] employees." The Department requested GSA "to withhold the total of [more than $67,000] from funds due and owing [Taylor]," which GSA did.

On December 20, 1994, the Labor Department notified Taylor of its conclusions. The Department summarized the results of its investigation, which "revealed violations of the labor standards provisions which, if not satisfactorily explained, would appear to constitute a disregard of your obligations to your employees within the meaning of ... the Davis–Bacon Act." The Department informed Taylor that it could "request a hearing before one of the Department of Labor's Administrative Law Judges pursuant to [29 C.F.R. §§ 5.11(b) and 5.12(b)] for a determination of the issues in this case."

Taylor did so by letter dated January 11, 1994, which stated:

> [W]e at Taylor Construction company hereby take exception to the allegations encompassed in your letter of 12/20/94 and further deny any deliberate violation of the Davis Bacon Act.
>
> . . . .
>
> By this letter we ask that this matter be brought before a Law Judge in the

proper jurisdiction to determine the facts of these aforesaid allegations.

The hearing before the administrative law judge began on November 3, 1997. On the second day of the hearing, the parties settled the case and entered into "consent findings," which provided that the Labor Department would give half of the funds it had withheld to Taylor, and pay the other half to Taylor's employees. Taylor also represented that it would not contract with the federal government and would be ineligible for up to three years to do so. The consent findings also provided:

> The Department of Labor enters this agreement with the position that Davis–Bacon and Contract Work Hours and Safety Standards Act violations occurred. The contractor enters this agreement with the position that Davis–Bacon and Contract Work Hours and Safety Standards Act violations did not occur; and, neither this agreement to release back wages nor execution of this agreement shall constitute or be construed as liability or an admission on the part of the Contractor of any violation of the Davis–Bacon Act and Contract Work Hours and Safety Standards Act or its' [sic] implementing regulations.

On December 17, 1997, the administrative law judge approved the settlement. He concluded that "the agreement justly resolves all issues in this matter. Upon consideration of the records and the Consent Findings, I hereby order and approve such findings. The Consent Findings constitute my findings of fact and conclusions of law and represent a full, final and complete adjudication of this proceeding."

C. Prior to completion of the Labor Department's investigation, GSA's contracting officer terminated the contract for default on two grounds: (1) Taylor had "fail[ed] to timely perform and to make progress on the contract"; (2) "[t]he Department of Labor has also noted Davis–Bacon Act violations on the subject contract." Taylor appealed the default termination to the Board, seeking to convert the default termination into one for the convenience of the government. The Board upheld the default termination.

The Board first rejected the contracting officer's ruling that Taylor had not met the performance time requirements of the contract. It stated that the government "has not proven" that Taylor "was properly terminated for ... failure to prosecute the work with diligence that would ensure its completion within the time specified in this contract." The government has not challenged this conclusion in this appeal, and we do not address the issue.

The Board affirmed the default termination, however, on the ground that Taylor had violated the contract's labor provisions. The Board ruled that the contracting officer's default termination on this ground was "supported ... with specific and detailed findings of appellant's Davis–Bacon Act and Contract Work Hours and Safety Standards Act violations from DOL's Employment Standards Administration's Wage and Hour Division."

## II

■ Under the Federal Acquisition Regulations specifying the labor provisions that certain federal procurement contracts must include, "disputes arising out of the labor standards provisions of the contracts are not to be subject to the Contract Disputes Act, but are to be resolved 'in accordance with the procedures of the Department of Labor' (which clearly means *by* the department)." *Emerald Maintenance v. United States*, 925 F.2d 1425, 1428 (Fed. Cir.1991). A board of contract appeals must accept the Labor Department's adjudication of such a dispute; the Board has no jurisdiction itself to determine a labor provisions dispute or to review the Labor Department's ruling on that issue. *See id.* at 1429; *Collins Int'l Serv. Co. v. United States*, 744 F.2d 812, 815 (Fed.Cir.1984).

■ Since a Labor Department determination that a contractor has violated the

labor provisions may result in a default termination of the contract, it is essential that before the Board approves a contracting officer's default termination on that ground, it is clear and beyond question that the Labor Department in fact has found under its established procedures that the contractor has committed such a violation. *Cf. J.D. Hedin Const. Co. v. United States,* 187 Ct.Cl. 45, 408 F.2d 424, 431 (1969) ("[A] default termination is a drastic sanction which should be imposed ... only ... on solid evidence.") (citation omitted). In the present case, the record does not support the Board's conclusion that the Labor Department so found.

■ A. The government first refers to the statements in the December 20, 1994 letter from the Labor Department's Wage and Hour Division Regional Administrator to Taylor that the Department's investigation "revealed violations of the labor standards provisions which, if not satisfactorily explained, would appear to constitute a disregard of your obligations to your employees within the meaning of Section 3(a) of the Davis–Bacon Act." After setting forth "a summary of the investigation findings based on the record as presently constituted," the Regional Administrator concluded: "Upon careful review of the investigation report, I find reasonable cause to believe that the violations of the Davis–Bacon Act, as amended, as described above, constitute a disregard of your obligations to your employees within the meaning of Section 3(a) of the Act."

The Regional Administrator stated, however, that he was "offering you an opportunity to request a hearing before one of the Department of Labor's Administrative Law Judges pursuant to [5 C.F.R. §§ 5.11(b) and 5.12(b) ] for a determination of the issues in this case, including the amounts of the back wages due and whether debarment action should be taken under Section 3(a) of the Davis–Bacon Act." He further stated that if Taylor did not request a hearing within thirty days, "my decision concerning the back wage findings

shall be final with respect to you and we will proceed to notify the contracting agency that action should be taken to disburse the monies being withheld under the contract to the underpaid employees."

This letter was a notice of alleged violations, and cannot fairly be viewed as a final decision of the Labor Department that Taylor had violated the labor provisions. The "investigative findings" there set forth were just that and no more. The Regional Administrator recognized the preliminary and tentative nature of those "findings" when he offered Taylor a hearing before an administrative judge "for a determination of the issues in this case" and stated that if Taylor did not so request within thirty days, the Regional Administrator's "decision concerning the back wage findings shall be final with respect to you." The letter referred to the Labor Department's regulations providing that "whenever, as a result of an investigation conducted by a Federal agency or the Department of Labor, the Administrator of the Wage and Hour Division finds reasonable cause to believe that a contractor or subcontractor has committed violations of the Davis–Bacon Act which constitute a disregard of obligations to employees, he shall notify the contractor or subcontractor of the findings and afford such contractor or subcontractor an opportunity to present such reasons or considerations as to why a debarment action should not be taken under Section 3(a) of the Davis–Bacon Act."

Like some other government agencies, the Labor Department has multiple functions in cases involving possible violations of the labor provisions of government contracts. On the one hand, it investigates and prosecutes such cases: on the other hand, it adjudicates them. *See infra* Part II.C (discussing the departmental regulations governing such procedures); *Grolier Inc. v. FTC,* 615 F.2d 1215 (9th Cir.1980) (noting the importance of separating the FTC's investigative and adjudicative functions); *FTC·v. Atlantic Richfield Co.,* 567 F.2d 96, 102 (D.C.Cir.1977) ("[T]he regula-

tory agencies have an obligation to keep [their investigative and adjudicative] roles separate insofar as is possible, in order to insure the judicial fairness of adjudicative proceedings and also the unrestricted vigor of investigative proceedings."). The December 20, 1994 letter charging Taylor with violations of the labor provisions was part of the Department's investigatory function; it was not, and did not purport to be, an adjudication that Taylor committed the charged violations.

The administrative proceeding entered its adjudicatory phase when the hearing began. If the hearing had been completed and the case had gone to final decision, the Labor Department could have and probably would have determined whether Taylor violated the labor provisions. The parties terminated the proceeding, however, when during the hearing they settled the case. Thus, the question is whether the consent findings of the settlement agreement, which the administrative law judge approved and adopted, constituted an adjudication by the Labor Department that Taylor had violated the labor provisions of the contract. The answer is no.

■ B. The government relies, as did the Board, upon the statement in consent finding 5 that "The Department of Labor enters this agreement with the position that Davis–Bacon and Contract Work Hours and Safety Standards Act violations occurred." That statement, however, is immediately followed by a parallel statement of the contractor's contrary position: "The contractor enters this agreement with the position that Davis–Bacon and Contract Work Hours and Safety Standards Act violations did not occur." The next portion of that sentence states: "and, neither this agreement to release back wages nor execution of this agreement shall constitute or be construed as liability or an admission on the part of the contractor of any violation of the Davis–Bacon Act and Contract Work Hours and Safety Standards Act or its implementing regulations."

Read together and in context, these three statements make clear that under the settlement agreement neither party admitted or determined anything about the merits of Taylor's alleged violations of the labor provisions. Each party stated and preserved its position—the Department that the provisions had been violated, and Taylor that they had not been—and Taylor further stated that by entering into the consent agreement it was not conceding liability for or admitting "any violation" of the labor provisions. As is typical of most settlements, each party received part but less than the whole of what it sought. The Labor Department obtained half of the amount it sought for Taylor's employees and Taylor's effective debarment from government contracting work for 3 years. Taylor in turn obtained half of the amount in dispute. Each party surrendered the right to a determination of the merit of the claim of violation and at the same time avoided the possibility of an adverse ruling.

As the Supreme Court has pointed out, "the scope of the consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, ... the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); *see also, Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed.Cir.1999) ("[T]he interpretation of the (settlement) agreement must be based, not on the subjective intentions of the parties, but on the objective words of their agreement."). The words of the consent findings simply cannot bear the weight the government would give them. They cannot fairly be construed as a deter-

mination by the Labor Department that Taylor violated the labor provisions of the contract. To the contrary, they merely set forth the terms upon which the parties settled their dispute over the issue without adjudicating it.

Perhaps the government is suggesting that because the administrative law judge adopted the consent findings as his own "findings of fact and conclusions of law ... represent[ing] a full, final and complete adjudication of this proceeding," those findings somehow constitute an adjudication and acceptance of the Labor Department's "position" that Taylor violated the labor provisions. Not only would such an argument be refuted by our discussion and analysis above, but it would prove too much. If the administrative law judge's adoption of the findings constituted an adoption of the Labor Department's "position" that Taylor violated the labor provisions, it necessarily also constituted an adoption of Taylor's contrary "position" that it had not done so. These two contentions are irreconcilably inconsistent and the administrative law judge's actions cannot have had that effect.

C. The contract provided that disputes over the labor provisions "shall be resolved in accordance with" the Labor Department's "procedures for resolving disputes concerning labor standards requirements" "set forth in 29 C.F.R. Parts 5, 6, and 7." Those provisions further support our conclusion that the consent findings did not constitute an adjudication by the Labor Department that Taylor violated the labor provisions of the contract.

29 C.F.R. § 5.11 "sets forth the procedure for resolution of disputes of fact or law concerning payment of prevailing wage rates, overtime pay, or proper classification." If there is such a dispute "in which it appears that relevant fact are at issue," the Regional Administrator notifies the contractor of the "investigative findings" and "possible debarment." *See* 29 C.F.R. § 5.11(b)(1). Within thirty days a contractor may request a hearing, *see* 29 C.F.R.

§ 5.11(b)(2), and if he does so, the case is referred to the Department's Chief Administrative Law Judge, *see* 29 C.F.R. § 5.11(b)(3). The regulations cover the proceedings before the administrative law judge, including review of the decision. *See* 29 C.F.R. § 6.30–6.35. There is a separate provision governing "Consent findings and order," 29 C.F.R. § 6.32, which includes the statement that "[a]ny agreement containing consent findings and an order disposing of a proceeding in whole or in part shall also provide: (1) That the order shall have the same force and effect as an order made after full hearing." 29 C.F.R. § 6.32(b)(1).

These regulations show that a Labor Department finding of a violation of a contract's labor provisions requires a final decision by the administrative law judge after a hearing or, if the contractor accepts the investigative findings and does not request a hearing, when those findings thereby become final. Although the regulations state that consent findings and a dispositive order "shall also provide ... [t]hat the order shall have the same force and effect as an order made after full hearing," the administrative law judge's order in this case did not include such a provision. Even if it had, however, that would not have aided the government's position. The effect of the consent order turns on its language and, as we have already shown, that language does not include a determination that Taylor violated the labor provisions of the contract. If the administrative law judge had entered the consent findings after a full hearing, the effect of the order would have been the same.

Acceptance of the government's argument that the mere statement in the consent order of the government's "position" should be treated as an adjudication by the Labor Department of that position would make it far more difficult, and perhaps virtually impossible, for the Department to negotiate consent settlements in these cases. Contractors would be extremely

reluctant to enter into consent orders that would have such an effect. The result would be inconsistent with the recognition of consent settlements in the regulations.

## CONCLUSION

The decision of the General Services Administration Board of Contract Appeals, to the extent it determined that Taylor violated the labor provisions of the contract, is reversed, and the case is remanded to the Board for further proceedings consistent with this opinion.

*REVERSED* and *REMANDED*.