SHINY ROCK MINING CORPORA-TION, Plaintiff/Appellant,

v.

UNITED STATES of America, Defendants/Appellees.

No. 86–3643.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1987.

Decided Aug. 17, 1987.

---

M. Craig Haase, Reno, Nev., for plaintiff/appellant.

Blake A. Watson and David C. Shilton, Washington, D.C., for defendants/appellees.

Before ANDERSON, TANG and NOONAN, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Shiny Rock Mining Corporation ("Shiny Rock") appeals from the district court's grant of summary judgment in favor of the government, 629 F.Supp. 877. The district court adopted the magistrate's findings which upheld the initial Bureau of Land Management ("BLM") decision and the affirmance and reaffirmance by the Interior Board of Land Appeals ("IBLA") that Shiny Rock's mining claim was null and void *ab initio* due to the "notation rule," thereby rejecting Shiny Rock's mineral patent application. We affirm in part and reverse and remand in part.

### FACTS

Public Land Order 3502 ("PLO 3502"), effective December 8, 1964, withdrew from appropriation under the United States mining laws all lands lying within a certain area of Forest Road 580 in the Willamette National Forest. The withdrawal is still in effect.

The Mandalay claim was located in 1979. Some time thereafter, Shiny Rock applied to the BLM for a mineral patent for that claim. The application was rejected in part and a portion of the Mandalay claim was declared null and void *ab initio* by the BLM because part of the claim is situated in the area withdrawn by PLO 3502. Excerpt of Record ("ER") p. 26.

Shiny Rock appealed to the IBLA, arguing that there were "errors, deficiencies, or violations of applicable statutes and regulations in the formulation, drafting, and publication of PLO 3502." ER p. 29. The IBLA held, however, that it was not necessary to address the legality of PLO 3502 in

order to resolve the issue before it, that being the validity of the Mandalay claim. The IBLA held:

> The Department has repeatedly held that the availability of land for appropriation or lease must at least initially be determined by recourse to the public records of the BLM. Under this so-called "notation rule," if the BLM records have been noted to reflect the devotion of land to a particular use that is exclusive of another conflicting use, no incompatible rights in the land can attach by reason of any subsequent application until the record has been changed to reflect the availability of the land for the desired use. The rule generally applies even where the notation was posted to the records in error or where the segregative use so noted is void, voidable, or has terminated or expired.

ER p. 30.

Shiny Rock petitioned for reconsideration, arguing that the application of the notation rule violated due process because it deprived Shiny Rock of its property right to locate mining claims on public lands since it "validates the unconstitutional actions of the BLM, that is, the alleged failure of BLM to follow its regulations in withdrawing the land at issue." ER p. 33. Because the BLM records reflected that the land in question was withdrawn from mineral entry before Shiny Rock located its claim, the IBLA reaffirmed its decision that the claim was null and void.

Shiny Rock filed suit in federal district court seeking review of the agency decisions and requesting a declaratory judgment that PLO 3502 is unconstitutional insofar as it deprives Shiny Rock of its property without due process and that if PLO 3502 is enforced, it will result in a taking of Shiny Rock's property without just compensation. Shiny Rock also sought a judgment permanently enjoining the enforcement of PLO 3502. ER pp. 1–2.

Following a hearing on the government's motion for summary judgment, the magistrate filed his findings and recommendation, recommending that the government's motion be granted. The magistrate found that the notation rule as applied did not violate Shiny Rock's due process rights "because it did not challenge the validity of the withdrawal at the proper time ... [and] [t]he notation rule as applied ... did not prevent plaintiff from exercising a valid property right." ER pp. 21–22. The magistrate held that because the withdrawal was noted on the BLM land records at the time the Mandalay claim was located and as long as the withdrawal was prima facie valid and remained uncancelled, the land in question was not subject to further entry. ER p. 20.

■ Because no objections to the magistrate's report were timely filed, the district court was relieved of its obligation to review the record *de novo*. *Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1206 (8th Cir. 1983). *See also Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir.1983). The district court entered judgment granting the government's motion.[1] This appeal followed.

## STANDARD OF REVIEW

■ The district court's grant of summary judgment is reviewed *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). The decision of the IBLA will be affirmed if it is supported by substantial evidence. *See Henrikson v. Udall*, 350 F.2d 949, 950 (9th Cir.1965), *cert. denied*, 384 U.S. 940, 86 S.Ct. 1457, 16 L.Ed.2d 538 (1966).

## DISCUSSION

A. The Validity of the Notation Rule

Shiny Rock argues that the application of the notation rule deprived it of its due process rights to a hearing on the merits of the validity of PLO 3502. We disagree.

1. Although Shiny Rock did not object to the magistrate's findings, failure to object does not constitute a waiver of the right to challenge the magistrate's conclusions of law. *U.S. Domina-* *tor v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102–03 (9th Cir.1985); *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 453–54 (9th Cir.1983).

■ The notation rule has been upheld repeatedly in one form or another in both judicial and administrative forums. A notation rule similar to the one at issue was first developed in the context of homestead entries on public lands. *See Hastings and Dakota R.R. v. Whitney,* 132 U.S. 357, 10 S.Ct. 112, 33 L.Ed. 363 (1889). The reasoning behind the decision became known as the notation rule:

> [T]he almost uniform practice of the [land] department has been to regard land, upon which an entry of record valid upon its face has been made, as appropriated and withdrawn from subsequent homestead entry, preemption, settlement, sale or grant until the original entry be cancelled or declared forfeited; in which case the land reverts to the government as part of the public domain, and becomes again subject to entry under the land laws.

*Id.* at 361, 10 S.Ct. at 114. The purpose of the notation rule is "to prevent confusion and conflict of claims." *Holt v. Murphy,* 207 U.S. 407, 414–15, 28 S.Ct. 212, 214–15, 52 L.Ed. 271 (1908). The courts have continued to apply the notation rule, most recently in *United States v. Smith Christian Min. Enterprises,* 537 F.Supp. 57 (D.Oregon 1981). The court in *Smith Christian* stated that a mining claim is void *ab initio* when it is located on land which at the date of location was included in an application for withdrawal which has been noted on the land records. *Id.* at 61 (citing *Canon, et al. v. Andrus,* No. 2–78–51, memo. op. at 4–7 (E.D.Cal. January 31, 1979), citing *John Boyd Parsons,* 22 IBLA 328 (1975)).

The notation rule, as originally upheld in early homestead cases, has been uniformly followed and applied by the Department of Interior since shortly after the Mineral Leasing Act was enacted in 1920. As applied, when BLM records have been noted to reflect use of land exclusive of another conflicting use, no rights of entry incompatible with the noted use may attach through subsequent entry, application, or use until the records have been changed to show that the land is again available for use and the notation removed from the records. *See Joyce A. Cabot,* 63 I.D. 122, 123 (1956); *Albert C. Massa,* 63 I.D. 279, 286 (1956); *Martin Judge,* 49 I.D. 171, 172 (1922).

■ Its purpose being valid and its application uniform, we hold that the notation rule is a proper means by which to administer public lands. Since there is no dispute that the withdrawal at issue was noted on BLM records and was still in effect when Shiny Rock attempted to locate the Mandalay claim, that portion of the claim located within the withdrawal is void *ab initio.* No property right was created, therefore no due process right was violated.

**B. The Validity of PLO 3502.**

Although we hold that Shiny Rock's mining claim is void *ab initio,* we must decide whether the district court erred nonetheless in failing to address Shiny Rock's allegation that PLO 3502 was improperly promulgated and implemented.

Since the inception of this case, Shiny Rock has challenged the validity of the promulgation and implementation of PLO 3502. In its appeal to the IBLA, Shiny Rock argued that PLO 3502 was invalid because, among other things, the public notices did not comply with federal regulations and that the withdrawal violated the Multiple Use Act of 1955. ER pp. 22–23. "Although it was not necessary to do so ... [the IBLA] did examine many of the issues raised by [Shiny Rock].... If [Shiny Rock] believes that the withdrawal was defective ... it may wish to pursue whether BLM would be willing to revoke or modify the withdrawal.... But the appeal to this Board is not the means for accomplishing this end." ER pp. 40–41.

Shiny Rock then filed its complaint in federal district court seeking, among other things, a declaratory judgment that PLO 3502 was unconstitutional and unenforceable for failing to comply with federal regulations and for violating various federal acts. ER pp. 1–9. The district court correctly determined that the notation rule is valid and was properly applied by the IBLA. However, the district court incorrectly granted summary judgment based on the notation rule without also addressing the validity of PLO 3502.

■ Even though the notation rule is a valid method by which to administer public lands, it can not be used as a shield to avoid addressing the merits of the validity of a public land withdrawal. If the public land has already been withdrawn, suit in federal court may be the only means by which to challenge the validity of the withdrawal. *See Sagebrush Rebellion v. Hodel,* 790 F.2d 760 (9th Cir.1986).

■ In its complaint, Shiny Rock challenged the validity of the 1964 withdrawal order. Although Shiny Rock has no legal claim to the land, the district court should have addressed the underlying challenge to PLO 3502. We therefore remand this case to the district court for consideration of this portion of Shiny Rock's complaint.[2] We leave to the district court the task of deciding any threshold issues that may apply such as standing and timeliness of the complaint. No costs are allowed to any party.

AFFIRMED in part, REVERSED and REMANDED in part.

---

**2.** In *Sagebrush,* plaintiffs brought suit in federal district court against the Secretary of the Interior, challenging the withdrawal of the "Birds of Prey" conservation Area in Southern Idaho for alleged failure to comply with the appropriate notice and hearing requirements. Both the district court and this court addressed the merits of that complaint, which supports our conclusion that filing suit in federal court is a proper means by which to challenge the validity of a public land withdrawal.