930 F.2d 738
 Robert M. GIRARD and Thomas J. Deef, Plaintiffs-Appellants,
v.
Ralph D. KLOPFENSTEIN; Conservation Service, an agency of
the U.S. Department of Agriculture; Commodity
Credit Corporation, Defendants-Appellees.
 No. 89-16669.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1991.
Decided April 15, 1991.
 
 Sydney Berde, Doherty, Rumble & Butler, Saint Paul, Minn., for plaintiffs-appellants.
 Michael A. Johns, Asst. U.S. Atty., Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before HUG, ALARCON and WIGGINS, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Robert Girard and Thomas Deef appeal from the summary judgment ordered in favor of the defendants, Ralph Klopfenstein, the Agricultural Stabilization and Conservation Service, and the Commodity Credit Corporation. Girard and Deef argue that the Agricultural Stabilization and Conservation Service's debarment proceedings violate the Administrative Procedure Act and procedural due process because the regulations which establish the procedures do not require that an administrative law judge preside. We dismiss the appeal as to Klopfenstein as moot and remand that portion of the judgment with directions to vacate the judgment for Klopfenstein only. We affirm the judgment as to the remaining defendants.
 
 FACTUAL BACKGROUND
 
 2
 United Dairymen of Arizona (UDA) is a farmers cooperative which, inter alia, sells cheese to the Commodity Credit Corporation (CCC) under the Federal Price Support Program. Robert Girard is the President of UDA. Thomas Deef is the Sales Manager.
 
 
 3
 The CCC is under the direction of the United States Department of Agriculture (USDA). The operation and day-to-day administration of CCC domestic programs is performed by the Agricultural Stabilization and Conservation Service (ASCS). At the time of the relevant events, Ralph Klopfenstein was the Deputy Administrator, Commodity Operations, of the ASCS.
 
 
 4
 UDA has been selling barrel cheese to the ASCS since 1982. In January of 1985, the CCC discovered that some of the barrels contained 40 pound block cheese that was ineligible for the program under which the barrel cheese was purchased. The USDA Office of the Inspector General (USDA OIG) conducted a preliminary investigation. In May, 1985, Klopfenstein suspended UDA from selling cheese to the Government for 18 months, pending an investigation of its performance under the contract. On April 13, 1987, after further investigation by the USDA OIG, the ASCS informed UDA that the investigation was closed. Klopfenstein participated in the investigation of Girard and Deef in connection with the alleged improper cheese sales.
 
 
 5
 On May 26, 1988, Klopfenstein notified Girard and Deef that the CCC intended to debar them from participation involving any government contracts for one year. The notice letter advised Girard and Deef that they could challenge the proposed debarment at a hearing before an ASCS "debarring officer."Girard and Deef requested additional information regarding the ASCS debarment proceedings. Klopfenstein informed them that he would be the debarring officer at their hearing. Girard and Deef objected. They demanded that the ASCS debarment hearing be conducted by an administrative law judge (ALJ) pursuant to the Administrative Procedure Act (APA). Klopfenstein denied their request on the ground that the ASCS debarment was an "informal" process subject only to ASCS, CCC, USDA, and Federal Acquisition Regulation (FAR) regulations. Klopfenstein gave Girard and Deef until November 5, 1988, to notify him of the date for the ASCS debarment hearings.
 
 
 6
 On November 3, 1988, Girard and Deef filed an action for declaratory relief, pursuant to 28 U.S.C. Sec. 2201, against Klopfenstein, ASCS, and CCC in the United States District Court for the District of Arizona. They prayed for a declaration that the proposed ASCS debarment proceedings violated their constitutional right to procedural due process, an order to the ASCS and CCC to conduct ASCS debarment proceedings before an ALJ in accord with the APA, and an injunction prohibiting any other ASCS debarment proceedings.
 
 
 7
 The district court granted summary judgment in favor of the defendants. It found (1) that exhaustion of administrative remedies was required before the court would entertain the substantive claim and (2) that the ASCS debarment proceedings did not violate procedural due process. We review a grant of summary judgment de novo. Kruso v. International Tel. and Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989); State Farm Fire and Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989).
 
 DISCUSSION
 
 8
 We confront several issues in this case. First, whether administrative remedies must be exhausted before a person threatened with debarment by the ASCS may contest a hearing officer's alleged bias. Second, whether the CCC ASCS debarment procedures, on their face, violate the APA or procedural due process. Third, whether an ASCS debarment proceeding violates the APA or procedural due process if the presiding officer also participated in the investigation.
 
 1. Exhaustion of Administrative Remedies
 
 9
 Girard and Deef argue that they are not barred from challenging the deprivation of their right to an impartial hearing officer prior to exhausting their administrative remedies "[b]ecause plaintiffs' constitutional challenge is entirely collateral to their substantive claim relating to the propriety of debarment." We review for abuse of discretion a district court's ruling concerning exhaustion of administrative remedies. Building Material & Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 509 (9th Cir.1989); Southeast Alaska Conserv. Council, Inc. v. Watson, 697 F.2d 1305, 1309 (9th Cir.1982). We conclude that exhaustion of administrative remedies is not required when the constitutional or statutory validity of debarment hearing regulations is challenged.
 
 
 10
 In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court held that exhaustion of administrative remedies is not a prerequisite to invoking the jurisdiction of a district court when "the constitutional claim is entirely collateral to [the] substantive claim," id. at 330, 96 S.Ct. at 900, and raises "at least a colorable claim" that an unfavorable administrative determination would result in irreparable harm, id. at 331, 96 S.Ct. at 900.
 
 
 11
 In Bowen v. City of New York, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Supreme Court concluded that the determination whether to require exhaustion "should also be guided by the policies underlying the exhaustion requirement." Id. at 484, 106 S.Ct. at 2032. These policies seek to prevent "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).
 
 
 12
 In Cassim v. Bowen, 824 F.2d 791 (9th Cir.1987), we formulated a three-part test to determine when exhaustion of administrative remedies is not required. We held that
 
 
 13
 [t]he claim at issue must (1) be collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal of the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility).
 
 
 14
 Id. at 795 (citations omitted).
 
 
 15
 The claim that the ASCS debarment procedures violate the APA and procedural due process meets the requirements of the Cassim v. Bowen test. The constitutional validity of the ASCS debarment procedures is collateral to the question whether Girard and Deef knew of the inclusion of ineligible cheese in UDA shipments to the ASCS. Girard and Deef have made a colorable claim that they will suffer an irreparable harm if their constitutional rights are not protected at this stage of the proceedings. A finding by the ASCS that Girard and Deef lacked the integrity necessary for government contracting, even if later reversed, could have a permanently stigmatizing effect on their professional reputations and employment opportunities. Finally, exhaustion of the administrative remedies would not assist the court in determining the constitutional validity of the agency procedures. The agency hearings are designed to determine whether Girard and Deef knew of the inclusion of ineligible cheese into UDA shipments to ASCS. A factual record concerning the inclusion of ineligible cheese would not assist an Article III court in determining whether the ASCS debarment procedures comport with the requirements of procedural due process. See Cassim, 824 F.2d at 795 ("there [is] nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise" when the challenge is to the validity of the procedure (quoting Bowen v. City of New York, 476 U.S. at 485, 106 S.Ct. at 2032)). Accordingly, we hold that exhaustion of administrative remedies was not required in this matter. The district court erred in concluding that exhaustion of administrative remedies was required prior to considering the merits of a contention that a hearing before a biased administrative officer violated procedural due process.
 
 2. The Claims Against ASCS and CCC
 
 16
 A. The Administrative Procedure Act does not require that an ALJ preside over ASCS debarment hearings.
 
 
 17
 Girard and Deef argue that section 554 of the Administrative Procedure Act (APA) requires an ASCS debarment hearing before an ALJ "because the hearing is an adjudication ... notwithstanding that the section, by its terms, is limited to adjudication 'required by statute to be determined on the record after opportunity for agency hearing.' " (Citing 5 U.S.C. Sec. 554(a) (Supp.1990).) Girard and Deef rely on Marathon Oil Co. v. Environmental Protection Agency, 564 F.2d 1253 (9th Cir.1977), for the proposition that application of the APA "does not rest on the presence or absence of the magical phrase 'on the record.' " Id. at 1263. They argue that the APA applies whether or not the hearing is "on the record."
 
 
 18
 The APA does not apply in this matter because a debarment hearing is not required by statute. The fact that the hearing is "on the record" does not trigger an application of the provisions of section 554 of the APA.
 
 
 19
 The APA applies "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C.A. Sec. 554(a) (Supp.1990). A person subject to debarment for improper conduct in performing a government contract has no statutory right to an evidentiary hearing. Debarment is within the inherent authority of contracting agencies. Gonzalez v. Freeman, 334 F.2d 570 (D.C.Cir.1964). As such, it is an "informal" procedure, for which a hearing is not statutorily required.
 
 
 20
 The Government asserts that the Contract Disputes Act, 41 U.S.C. Secs. 601 et seq., controls the procedures at issue here. We need not consider that issue at this time because it would not change the result we reach. Section 605 of Title 41 provides:
 
 
 21
 All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided by this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding.
 
 
 22
 41 U.S.C.A. Sec. 605(a) (West 1987). There is no requirement in section 605 that the contracting officer hold a hearing prior to reaching a decision.
 
 
 23
 Girard's and Deef's right to present their defense at an ASCS debarment hearing derives solely from ASCS and USDA regulations. Because ASCS debarment proceedings are not required by statute, Girard and Deef are not entitled to a hearing before an ALJ under the express terms of the APA.
 
 
 24
 B. Procedural due process does not require that an ALJ preside over ASCS debarment hearings.
 
 
 25
 Girard and Deef argue that the ASCS debarment procedures, pursuant to 48 C.F.R. Secs. 9.406, 409.406-3, are constitutionally deficient on their face. They contend that the procedures "are insufficient to provide procedural safeguards sufficient to protect [their] property and liberty interests against unwarranted infringement" and thereby violate the requirements of procedural due process. "A district court's determinations on questions of law ... which implicate constitutional rights are reviewed de novo." Wood v. Sunn, 865 F.2d 982, 986 (9th Cir.1988).
 
 
 26
 The ASCS debarment procedures are established pursuant to the Federal Acquisition Regulations. 48 C.F.R. Sec. 9.406-3(b)(1) (1988). The ASCS regulations provide that a contractor must be given the opportunity to appear at an informal hearing prior to debarment. Id. Sec. 409.406-3(c). The contractor may be represented by counsel and either party may call witnesses, the proceedings must "be conducted expeditiously and in such a manner that each party will have an opportunity to present all information considered pertinent to the proposed debarment." Id.
 
 
 27
 In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court explained the method for determining what process is due before a person can be deprived of a protected interest. Id. at 323, 96 S.Ct. at 897. The Court instructed that three factors must be weighed:
 
 
 28
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
 
 
 29
 Id. at 335, 96 S.Ct. at 903. The Mathews v. Eldridge factors have become the standard for determining whether certain challenged administrative procedures comply with the requirements of due process. K. Davis, Administrative Law Treatise Sec. 13:12 (Supp.1989).
 
 
 30
 Girard and Deef argue that the ASCS debarment procedures violate due process, because the ASCS debarment regulations "provide no guarantee that an individual subject to debarment will receive a fair hearing before an impartial decision maker." This contention lacks merit.
 
 
 31
 The Federal Acquisition Regulations, provide that the debarment procedures established by government agencies must be "consistent with principles of fundamental fairness." 48 C.F.R. Sec. 9.406-3(b)(1) (1988). The concept of fundamental fairness includes the right to an impartial decision maker. See Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970) ("an impartial decision maker is essential"); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ("no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome"); Wong Yang Sung v. McGrath, 339 U.S. 33, 45-46, 70 S.Ct. 445, 451-52, 94 L.Ed. 616 (1950) (invalidating hearings conducted by active members of the investigative branch of agency who might be required to examine witnesses and present evidence on behalf of the Government). The requirement of fundamental fairness guarantees a fair hearing before an impartial trier of fact to persons facing ASCS debarment proceedings.
 
 
 32
 Girard and Deef argue that the Supreme Court's decision in Wong Yang Sung compels the conclusion that ASCS debarment hearings must be conducted by an ALJ. Wong Yang Sung is inapplicable to the matter sub judice.
 
 
 33
 In Wong Yang Sung, Immigration Service regulations provided that deportation hearings were to be conducted by active members of its investigative branch. Id. at 45, 70 S.Ct. at 452. The regulations required the officer who presided over Wong Yang Sung's hearing to "conduct the interrogation of the alien and the witnesses in behalf of the Government and ... cross examine the alien's witnesses and present such evidence as [was] necessary to support the charges in the warrant of arrest." Id. at 46, 70 S.Ct. at 452. The Court commented that the procedures were "a perfect exemplification of the practices so unanimously condemned" by the Congress which enacted the APA. Id. at 45, 70 S.Ct. at 452. The Supreme Court had previously interpreted the Deportation Statute, 26 Stat. 1084, c. 551 (1891), to require a hearing prior to deportation. The Japanese Immigrant Case, 189 U.S. 86, 99-101, 23 S.Ct. 611, 614, 47 L.Ed. 721 (1902). This construction was held to be necessary to save the statute from constitutional invalidity. Id. In Wong Yang Sung, the Court concluded that its interpretation of the Deportation Statute in the Japanese Immigrant Case brought it within the provisions of the APA. Wong Yang Sung, 339 U.S. at 48-51, 70 S.Ct. at 453-54. The Court said:
 
 
 34
 We think that the limitation to "hearings required by statute" in Sec. 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion. We do not think the limiting words render the Administrative Procedure Act inapplicable to hearings, the requirement for which has been read into the statute by the Court in order to save the statute from invalidity. They exempt hearings of less than statutory authority, not those of more than statutory authority.
 
 
 35
 339 U.S. at 50, 70 S.Ct. at 454.
 
 
 36
 Under the ASCS regulations, the debarring officer is not a member of the investigative branch of the agency. Furthermore, the regulations, on their face, do not merge the functions of prosecutor and decision-maker. In Wong Yang Sung, a hearing, required under the Deportation Statute, was conducted in a way which denied due process.
 
 
 37
 In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and its progeny, the courts have upheld numerous procedural schemes other than the one in the APA. See Cassim v. Bowen, 824 F.2d 791, 798 (9th Cir.1987) (citing cases upholding administrative procedures that did not comport with the APA). As discussed above, the procedures set forth at 48 C.F.R. Secs. 9.406, 509.406-3 comport with the fundamental fairness requirements of due process. Therefore, the rationale of Wong Yang Sung has no application to the ASCS debarment regulations.
 
 3. The Claims Against Klopfenstein
 
 38
 Girard and Deef assert that our decision in Grolier, Inc. v. F.T.C., 615 F.2d 1215 (9th Cir.1980), prevents Klopfenstein from presiding at their ASCS debarment hearings. In Grolier, a Federal Trade Commission ALJ presided over an administrative hearing in which the appellant was charged with unfair competition and deceptive business practices. Id. at 1217. The ALJ had served as an attorney-advisor to an FTC commissioner during a period in which Grolier had been investigated and charged by the FTC. Id. Grolier moved the FTC to disqualify the ALJ and for an evidentiary hearing to determine whether the ALJ had been exposed to prejudicial ex parte information while an attorney-advisor. Id. The FTC denied the motion. Grolier appealed directly to this court, under 15 U.S.C. Sec. 45. We reversed, holding that, in such circumstances, section 554(d) of the APA required an evidentiary hearing. Id. at 1221-22.
 
 
 39
 Subsequent to the filing of the notice of appeal in this matter, Klopfenstein resigned from the ASCS. Thus, any issue regarding his ability to serve as an impartial debarring officer has become moot. In United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), the Supreme Court instructed that when events occur after the filing of the notice of appeal that render an issue moot, the proper procedure is to dismiss the appeal with instructions to the district court to vacate the judgment on that issue. Id. at 39-40, 71 S.Ct. at 106-07; Intn'l Brotherhood of Teamsters, Etc., Local Union No. 2702 v. Western Airlines, 854 F.2d 1178 (9th Cir.1988); Fulz v. Rose, 833 F.2d 1380 (9th Cir.1987); United States v. Silva and Silva Accountancy Corp., 641 F.2d 710 (9th Cir.1981). "When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary." Munsingwear, 340 U.S. at 40, 71 S.Ct. at 107.
 
 
 40
 The appeal of the summary judgment in favor of Klopfenstein is DISMISSED. The district court is instructed to vacate the judgment in favor of Klopfenstein. The judgment for the remaining defendants is AFFIRMED.