**UTU UTU GWAITU PAIUTE TRIBE OF the BENTON PAIUTE RESERVATION, Plaintiff,**

**v.**

**DEPARTMENT OF the INTERIOR; Manual Lujan, Secretary of the Department of Interior; Bureau of Indian Affairs; Eddie Brown, Indian Affairs, Defendants.**

**Civ. No. S–90–0311–WBS.**

United States District Court, E.D. California.

June 6, 1991.

Jay B. Petersen, Lawrence R. Stidham, Dorothy Alther, Michael S. Pfeffer, Stephen V. Quesenberry, California Legal Services, Oakland, Cal., for plaintiff.

Richard Jenkins, U.S. Atty., Debora Van Der Weijde, Asst. U.S. Atty., Sacramento, Cal., for defendants.

## OPINION

SHUBB, District Judge.

### I. INTRODUCTION

Plaintiff Utu Utu Gwaitu Paiute Tribe ("Tribe") filed this complaint for declaratory and injunctive relief under the Administrative Procedure Act ("APA") to challenge the validity of 43 C.F.R. § 4.603(a). The Department of Interior ("Department") promulgated rules, among them § 4.603, for the purpose of establishing "procedures for the submission and consideration of applications for awards [of attorney fees and costs] against the Department" in order to implement the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504. The purpose of the EAJA is to reduce the deterrents and disparity between individuals and the government "by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States unless the government action was substantially justified." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 6, *reprinted in*, 1980 U.S.Code Cong. & Admin.News 4984, 4984.

Section 4.603(a) provides:

These rules apply to adversary adjudications *required by statute* to be conducted by the Secretary under 5 U.S.C. § 554. Specifically, these rules apply to adjudications conducted by the Office of Hearings and Appeals under 5 U.S.C. § 554 which are *required by statute* to be determined on the record after opportunity for an agency hearing. These rules do not apply where adjudications on the record are not required by statute even though hearings are conducted using procedures comparable to those set forth in 5 U.S.C. § 554. [Emphasis added.]

The Department interprets and applies § 4.603 to deny attorney fees under the EAJA in hearings that are constitutionally mandated but not expressly "required by statute."

The Tribe contends that the regulation, as so interpreted and applied, is contrary to the EAJA and *Wong Yang Sung v. McGrath,* 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, *modified on other grounds,* 339 U.S. 908, 70 S.Ct. 564, 94 L.Ed. 1336 (1950). Jurisdiction is predicated on 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 704, and 706 of the APA.

Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment, on the ground that the action is time-barred by the statute of limitations, 28 U.S.C. § 2401(a). The Tribe has filed a motion for summary judgment on the merits. Defendants oppose this motion and counter-move for summary judgment.

### II. PROCEDURAL AND FACTUAL BACKGROUND

On December 23, 1987, the Tribe appealed a November 24, 1987 decision of the Sacramento Area Director, Bureau of Indian Affairs ("BIA"), to the Commissioner of Indian Affairs. That decision denied the Tribe compensation under the fifth amendment of the United States Constitution for the taking of a right-of-way for a BIA road crossing the Tribe's reservation. The Interior Board of Indian Appeals ("Board") assumed jurisdiction over the Tribe's appeal in April, 1988. On February 22, 1989, the Board remanded the case to the Area Director with instructions to prepare a new appraisal of the right-of-way consistent with federal law.

On March 27, 1989, the Tribe filed an application with the Board under 5 U.S.C. § 504 of the EAJA for attorney fees and expenses. The Board denied the application on June 19, 1989 pursuant to 43 C.F.R. § 4.603(a), on the ground that the agency adjudication denying the Tribe compensation for the right-of-way, was not mandated by statute. Section 4.603(a), as interpreted and applied, limits EAJA fees to adjudications which are "required by statute to be

determined on the record after opportunity for an agency hearing." The Board therefore ruled that the adjudication was not within the scope of § 4.603(a). The Board did not consider the merits of the Tribe's regulatory challenge on the ground that it lacked jurisdiction to invalidate § 4.603(a).

In this action, filed March 12, 1990, the Tribe specifically requests that § 4.603(a) be declared to be invalid under the EAJA and the APA. In addition, the Tribe asks the court to remand its EAJA application to the Board for consideration of the merits of the application and to award attorney fees and costs herein.

## III. DISCUSSION

A. *Defendants' Motion to Dismiss or Motion for Summary Judgment.*

 In the absence of a more specific statute of limitations, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). While neither party disputes that 28 U.S.C. § 2401(a) is the proper statute of limitations, defendants contend, relying on *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir.1990) (*"Shiny Rock III"*), that the Tribe's challenge began to run against the Tribe as of the date of publication of the regulation in the Federal Register and is therefore barred by the statute of limitations because it was not filed within six years of that date.[1] The court disagrees.

1. Shiny Rock III Applies to Procedural Challenges.

There is a distinction between a procedural challenge and a substantive challenge to an administrative regulation. In a procedural challenge, the plaintiff seeks to establish the invalidity of a regulation "based on the procedural adoption of the regulation[ ]." *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir.1988). In *Pen-*

*fold*, the Sierra Club claimed that in adopting the challenged regulations, the Bureau of Land Management "failed to follow the procedures required by the National Environmental Policy Act and the Alaska National Interest Lands Conservation Act." *Id.* at 1310–11. A more common procedural challenge concerns the failure of the administrative agency in question to comply with the notice and comment provisions of the APA, 5 U.S.C. § 553, prior to final publication of the regulation. *See, e.g., Chemical Waste Management v. United States Envtl. Protection Agency*, 869 F.2d 1526, 1529 (D.C.Cir.1989). Thus, in a procedural challenge, it is the manner in which the regulation was adopted which is in issue; the content or substance of the regulation is irrelevant.

Challenges alleging the existence of a procedural irregularity concerning the promulgation of a regulation must be brought within six years from the date the regulation was published in the Federal Register. *Penfold*, 857 F.2d at 1315–16 (procedural challenge barred by 28 U.S.C. § 2401(a) because not filed within six years of the date the regulation was published in the Federal Register).

In a substantive challenge, on the other hand, the legality of substance of the regulation is in issue. Typically, a substantive challenge is based on grounds that it exceeds statutory authorization, or that its authorizing legislation is unconstitutional. Regulations are subject to both "facial" and "as applied" attacks. *See e.g., Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, 1764, 114 L.Ed.2d 233 (1991) (facial challenge to "regulations which limit ability of Title X fund recipients to engage in abortion related activities" brought on statutory and constitutional grounds); *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 566 & 586, 109 S.Ct. 1361, 1365 & 1375, 103 L.Ed.2d 602 (1989) (as applied challenge to regulations applied by FSLIC to bar creditors of insolvent savings

---

**1.** The challenged regulation, 43 C.F.R. § 4.603, was promulgated as a final rule on April 25, 1983. 48 Fed.Reg. 17,595–17,599 (April 25, 1983) (Exhibit 1 to defendants' moving papers);

the Tribe filed its complaint on March 12, 1990. Since the court considers facts outside the pleadings, the court decides plaintiffs' motion as a motion for summary judgment.

and loan associations from adjudicating claims in court pending exhaustion of administrative remedies brought on statutory and constitutional grounds).

The Tribe's challenge does not relate to the manner in which § 4.603 was adopted. Rather, the Tribe alleges that the regulation as applied is inconsistent with the EAJA and *Wong Yang Sung* and is therefore properly characterized as a substantive, "as applied" challenge. For the reasons discussed below, the court concludes that *Shiny Rock III* merely applied *Penfold* to preclude litigation of a procedural challenge brought more than six years after the regulation was published in the Federal Register.

The facts and procedural background of *Shiny Rock III* are set forth in *Shiny Rock III* and *Shiny Rock Mining Corp. v. United States*, 825 F.2d 216 (9th Cir.1987) ("*Shiny Rock II*"), aff'g in part and rev'g in part, *Shiny Rock Mining Corp. v. United States*, 629 F.Supp. 877 (D.Or.1986) ("*Shiny Rock I*"). In that case, plaintiff mining company first learned that certain lands had been withdrawn from appropriation under the United States mining laws in 1981 sometime after filing an application for a mineral patent; that application was denied by the Bureau of Land Management ("BLM") in 1983. *Shiny Rock III*, 906 F.2d at 1363. The lands in question were withdrawn by certain Public Land Orders ("Orders") published in December, 1964 in the Federal Register. *Id.* The mining company argued that application of the Orders to it would constitute a violation of due process and would validate "the unconstitutional actions of the BLM, that is, the alleged failure of BLM to follow its regulations in withdrawing the land at issue." *Shiny Rock II*, 825 F.2d at 218. The *Shiny Rock II* court appeared to characterize the mining company's challenge as "procedural," referring to Shiny Rock's allegation that the Order "was improperly promulgated and implemented" because the "public notices did not comply with federal regulations and that the withdrawal violated the Multiple Use Act of 1955." *Id.* at 219. The *Shiny Rock II* court remanded for

consideration of this regulatory challenge. *Id.* at 220.

On remand, the district court dismissed Shiny Rock's challenge as barred by the statute of limitations holding that the notices published in the Federal Register "adequately described the land withdrawal" and therefore the right to challenge the withdrawal "accrued at the time ... [the Orders] became effective." *Shiny Rock III*, 906 F.2d at 1364. The Ninth Circuit ruled that actual notice was not required, that publication in the Federal Register constituted constructive notice of the government action, and that the notices were not defective. *Id.* at 1364–65. Without deciding whether Shiny Rock actually had standing to sue within six years from the date of publication, the Ninth Circuit, relying on *Penfold*, rejected Shiny Rock's argument that standing was a "prerequisite to the accrual of a right of action for statute of limitations purposes" and held that Shiny Rock's claim was time-barred. *Id.* at 1365. However, the court found that Shiny Rock was injured by the land withdrawal. *Id.* at 1365–66.

Defendants argue that the mining company's claim in *Shiny Rock III* is properly characterized as both a procedural and substantive challenge and that *Shiny Rock III* extended the reasoning of *Penfold* to limit all challenges to regulations to within six years of their promulgation. Defendants rely on the following statement in *Shiny Rock III*: "Shiny Rock ... filed its declaratory judgment suit, arguing that *enforcement of ... [the Orders] would violate its constitutional rights.*" *Id.* at 1363–64 (emphasis added). Examination of other descriptions of Shiny Rocks' claim in both *Shiny Rock II* and *Shiny Rock III*, however, reveals that the claim is properly characterized as a procedural challenge. As noted above, *Shiny Rock II* described the claim as one alleging procedural irregularities in the adoption of the regulation. The *Shiny Rock III* court noted that Shiny Rock, in its administrative complaint, argued that "there were errors and violations of statutes and regulations in the formulation and publication" of the Orders. *Shiny Rock III*, 906 F.2d at 1363. It appears,

therefore, that it was the manner of adoption, and not the substance of the Orders, that Shiny Rock sought to attack. The fact that Shiny Rock alleged that application of the Orders to it would result in a constitutional violation does not indicate that its regulatory challenge was "substantive." A due process violation may result, for example, when an agency fails to follow the proper notice provisions of the APA. Based on the foregoing, the court finds that the *Shiny Rock III* merely applied *Penfold* to dismiss a time-barred claim of procedural irregularity.

2. The Statute of Limitations Does Not Begin to Run Against Substantive "as Applied" Regulatory Challenges on Publication in the Federal Register.

In the absence of specific case law on point, the court must apply the traditional test for determining when the Tribe's claim accrued. "Under federal law a cause of action accrues when the plaintiff is aware of the wrong and can successfully bring a cause of action." *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1396 (9th Cir.), *cert. denied*, 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986) (cited in *Shiny Rock III*, 906 F.2d at 1364). Under the two-prong test enunciated in *Acri*, the Tribe's right to challenge did not accrue until it was aware of the wrong and could successfully bring a cause of action. For the reasons discussed below, the court finds that the statute of limitations did not begin to run against the Tribe on the date the regulation was published in the Federal Register.

Unlike a procedural irregularity, which will have occurred by the time the regulation is published as "final" in the Federal Register, unlawful agency interpretation of a regulation is not apparent, unless the regulation is clearly subject to facial attack, until it has been applied. In light of the Supreme Court's interpretation of "required by statute" in 5 U.S.C. § 554[2] and

the agency inclusion of the "required by statute" language in 43 C.F.R. § 4.603, the agency's interpretation of § 4.603 to deny attorney fees in constitutionally required adjudications is not facially apparent. The Tribe therefore did not receive constructive notice of the wrong at the time the regulation was published.

The court observes, in this regard, that if it were to accept defendants' position, an agency could effectively shield its interpretation of a regulation from all judicial scrutiny either by not enforcing it until after the statute of limitations has run or by reinterpreting it after the statute has run. This is inconsistent with the purpose of the EAJA. In the Statement accompanying the Model Rules for the Implementation of the EAJA prepared by the Administrative Conference of the United States ("ACUS"), the ACUS observed that "questions of the Act's meaning will be resolved by the courts...." Agency Implementation, 46 Fed.Reg. 32,900, 32,900 (June 25, 1981). Such a question is presently before this court today.

Under the second prong of *Acri*, a plaintiff must suffer an injury. The promulgation of § 4.603 did not injure the Tribe because it was not until the regulation was interpreted and applied to it that the Tribe was deprived of a benefit under the EAJA. In *Shiny Rock III*, the court found that Shiny Rock was injured as a result of the promulgation of the regulation because the amount of land subject to mining patents was reduced. More important, however, Shiny Rock could have challenged the regulation within the statute of limitations. Regardless of whether Shiny Rock had standing to bring its due process challenge to the regulation without first applying for a patent and receiving a denial, it is clear that Shiny Rock could have perfected its standing by applying for and receiving a denial. In contrast, the Tribe in the present case had no independent ability to perfect standing by filing a petition for attorney fees. In order for the Tribe to recover attorney fees under the EAJA it

---

**2.** As discussed in more detail below, the Supreme Court interpreted "required by statute" to mean, in effect, "required by statute or the Constitution." *See Wong Yang Sung*, 339 U.S. at 50, 70 S.Ct. at 454.

must have suffered a legal wrong, been represented by an attorney, been successful on the merits in an adjudication under § 554, and have filed a timely petition for attorney fees. For the Tribe to have been able to challenge the interpretation and application of § 4.603, it must have first suffered a denial of an attorney fee petition pursuant to the allegedly invalid application of § 4.603. The Tribe was therefore required to wait for the right circumstances to come along. The APA provides standing to anyone "adversely affected" by an agency action. 5 U.S.C. § 702. The Tribe was not adversely affected until the first time a petition for attorney fees was denied under § 4.603. For these reasons, the court finds that the statute of limitations did not begin to run as of the date of publication in the Federal Register.

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.1984). Defendants are not entitled to judgment as a matter of law because the statute of limitations did not begin to run against the Tribe until some time after publication of § 4.603.

Defendants have the burden of establishing that the Tribe's claim is barred by the statute of limitations. *United States v. Carter*, 906 F.2d 1375, 1378 (9th Cir.1990) (statute of limitations is an affirmative defense therefore burden on defendant in motion for summary judgment to show statute bars plaintiff's complaint). Defendants proffer no evidence as to when plaintiff Tribe knew or should have known of the agency's interpretation, or when the first occasion occurred in which the Tribe's application for attorney fees was denied because of the agency's interpretation of § 4.603. For these reasons, defendants' motion for summary judgment on the ground that the Tribe's claim is time-barred must be denied.

B. *The Tribe's Motion for Summary Judgment.*

The court now turns to the merits of the Tribe's regulatory challenge and the defendants' counter-motion.[3]

1. Standards of Review.

It is undisputed that the Board denied the Tribe's application for attorney fees based on its determination that 43 C.F.R. § 4.603(a) limits the application of the EAJA to adversary adjudications "required by statute to be determined on the record after opportunity for an agency hearing" and that the Tribe's adjudication, because it was not mandated by statute, was not within the scope of § 4.603(a). An administra-

---

**3.** Defendants also move to dismiss the Tribe's APA claim on the ground that 5 U.S.C. § 504 of the EAJA provides the exclusive means for obtaining review of the agency's legal determinations with respect to the denial of an EAJA petition. The court has previously considered defendants' motion to dismiss the Tribe's complaint as untimely on the ground the claim was governed by the 30-day statute of limitations period set forth at 5 U.S.C. § 504(c)(2). The court observed that federal civil procedure is not supposed to be a game in which the plaintiff must guess which shell contains the pea or which door contains the prize in order to gain access to the court. The court denied defendants' motion because the Tribe was not seeking review of the agency's decision—the agency expressly held that it had no jurisdiction to consider the legality of its regulation—and the claim was not clearly of a type that could be raised

and adjudicated under § 504(c)(2). That order is dispositive of this motion.

While defendants now concede that regulatory challenges such as the Tribe's may be adjudicated under § 504, that concession does not affect the court's earlier ruling. In the absence of anything to suggest that Congress intended the remedy of § 504(c)(2) to be exclusive of the remedy under the APA, an APA claim constitutes an alternative, but parallel remedy. Legislative history indicating that a court "may also modify a decision where there has been an error of law" when reviewing an EAJA application, does not establish that Congress intended § 504 to be the exclusive remedy for a claim such as the Tribe's. H.R.Rep. No. 120, 99th Cong., 1st Sess. 17, *reprinted in*, 1985 U.S.Code Cong. & Admin.News 132, 145 n. 23. Defendants' motion to dismiss is therefore denied.

tive agency's "interpretations ... of regulations present questions of law, which are reviewable de novo." *Oregon Envtl. Council v. Kunzman,* 817 F.2d 484, 493 (9th Cir.1987); *Brown v. Sullivan,* 916 F.2d 492, 495 (9th Cir.1990) ("Issues concerning the proper interpretation of the EAJA are reviewed de novo."). Summary judgment may properly be entered when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

In enacting the EAJA and exposing the government to liability for costs and fees, Congress granted a limited waiver of sovereign immunity. In general, waivers of sovereign immunity are strictly construed. *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). However, the Ninth Circuit has recognized an exception to the general rule of strict construction with respect to the EAJA, observing "that Congress, in reauthorizing the EAJA in 1985, repeatedly chastised the courts for a restrictive interpretation of the EAJA and urges us to take the 'expansive view' of the Act and apply 'the broader meaning.'" *Abela v. Gustafson,* 888 F.2d 1258, 1263 (9th Cir.1989) (quoting H.Rep. No. 120, 99th Cong., 1st Sess. 8, 19, *reprinted in,* 1985 U.S.Code Cong. & Admin.News 137, 147).

Defendants also contend that the Department's interpretation is entitled to deference. "While an agency's interpretation of its statute is entitled to deference, 'the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute ... that are inconsistent with the statutory mandate or that frustrate the [policies] that Congress sought to implement.'" *International Longshoremen's & Warehousemen's Union v. Meese,* 891 F.2d 1374, 1380 (9th Cir.1989) (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981)).

### 2. Relevant Statutes and Regulations and Wong Yang Sung.

Under the EAJA of the APA:

An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).

" '[A]dversary adjudication' means ... an adjudication under section 554 of this title...." 5 U.S.C. § 504(b)(1)(C). Section 554 of the APA accords certain procedural rights in "adjudication[s] required by statute to be determined on the record after opportunity for agency hearing...." 5 U.S.C. § 554(a).

On its face, § 554 did not create any procedural or substantive rights for constitutionally required adjudications. The Supreme Court, however, in finding that constitutionally required deportation hearings, not expressly "required by statute" were "adjudications" for the purpose of the APA, has held that the limitation to hearings "required by statute" merely exempted hearings of "less than statutory authority, [but] not those of more than statutory authority." *Wong Yang Sung,* 339 U.S. at 50, 70 S.Ct. at 454. "We would hardly attribute to Congress a purpose to be less scrupulous about the fairness of a hearing necessitated by the Constitution than one granted by it as a matter of expediency." *Id.* Thus the Supreme Court found that Congress intended "required by statute" under the APA to be interpreted to mean "required by statute or the Constitution." The Tribe contends that Congress, in adopting the EAJA in 1980, intended to provide for attorney fees in "adjudications" required by statute or the Constitution.

Section § 4.603 applies to hearings "under 5 U.S.C. § 554 which are *required by statute* to be determined on the record after opportunity for an agency hearing." 43 C.F.R. § 4.603(a) (emphasis added). De-

fendants contend that Congress intended to limit awards of attorney fees to hearings "required by statute" and that the agency is entitled to interpret the language "required by statute" literally.

### 3. EAJA Applies to Constitutionally Mandated Hearings Required to Be Conducted in Accordance with § 554 of the APA.

The parties' "dispute centers around the meaning of the phrase 'an adjudication under section 554'" as provided in the EAJA. *Ruiz v. INS*, 838 F.2d 1020, 1023 (9th Cir.1988) (en banc) (*"Ruiz III"*), *aff'g*, *Ruiz v. INS*, 813 F.2d 283 (9th Cir.1987) (*"Ruiz II"*), *denying rehearing to*, *Ruiz v. INS*, 787 F.2d 1294 (9th Cir.1986) (*"Ruiz I"*), *withdrawn*, *Ruiz v. INS*, 818 F.2d 712 (9th Cir.1987) (attorney fees available under the EAJA in deportation hearings required by statute but not governed by the APA). In light of *Wong Yang Sung's* interpretation of "required by statute" the court finds the language of § 504 of the EAJA to be ambiguous. Therefore, the court is "justified in looking to the legislative history and purpose of the EAJA in order to ascertain the correct reading." *Ruiz III*, 838 F.2d at 1023. Even if the court were to find that "the words of the statute are plain and unambiguous on their face, ... [the court] may still look to the legislative history if the plain meaning of the words is at variance with the policy of the statute as a whole ... or to see if there is a 'clearly expressed legislative intention' contrary to the language." *Id.* (quoting *INS v. Cardoza Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987)).

The Ninth Circuit has examined the meaning of an "adjudication under section 554" and the legislative history of the EAJA in some detail although not in the same context. *See Ruiz II*, 813 F.2d 283; *Ruiz III*, 838 F.2d 1020. To determine whether attorney fees are available under the EAJA in hearings which are required by statute, but not governed by the APA, the court looks "at the procedures by which ... [the] hearings are actually conducted, rather than determining whether such hearings are technically governed by the APA." *Id.* at 1023. Though the deportation hearings at issue in *Ruiz* were not governed by the APA, "[d]eportation proceedings are mandated by the immigration statute, which provides that a '[d]etermination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have a reasonable opportunity to be present.'" *Id.* at 1024 (quoting 8 U.S.C. § 1252(b)). The Ninth Circuit therefore concluded that deportation proceedings were "adjudications" as defined under 5 U.S.C. § 554. *Id.*

The Ninth Circuit's analysis in *Ruiz III* centers on how the hearings are required to be conducted. If an agency voluntarily provides a hearing, and even if it is conducted using procedures comparable to those set forth in § 554, an individual will not be entitled to attorney fees under the EAJA. *Ruiz III*, 838 F.2d at 1024, n. 7 (citing Agency Implementation, 46 Fed. Reg. at 32,901). If an agency is required to employ the procedures of § 554, even when the hearing is not governed by the APA, then attorney fees are available under EAJA provided the applicant satisfies the other requirements of the act. *See Ruiz III*, 838 F.2d at 1024.

*Wong Yang Sung* requires that constitutionally mandated hearings be conducted in accordance with the procedures set forth in 5 U.S.C. § 554. Applying the rationale of *Ruiz III*, the court finds that constitutionally mandated hearings which are required to be conducted in accordance with § 554 are "adjudications" defined under section 554 and therefore that Congress intended for the EAJA to apply.[4]

---

4. Recently, the Ninth Circuit considered whether *Wong Yang Sung* required disbarment proceedings before the Agricultural Stabilization and Conservation Service to be conducted in accordance with § 554 of the APA. *Girard v. Klopfenstein*, 930 F.2d 738, 741 (9th Cir.1991).

The Ninth Circuit did not discuss whether the hearings were required by the Constitution; however, the court ruled that *Wong Yang Sung* was inapplicable. *Id.* at 743. The court then analyzed the administrative procedures and found them to comport with due process and

The legislative history mandates this conclusion. The purpose of the EAJA

> rests on the premise that certain individuals, partnerships, corporations and labor and other organizations may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government....

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in,* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4984. The bill further

> rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law.

*Id.* at 10, 1980 U.S.Code Cong. & Admin. News at 4988. As the Court reasoned in *Wong Yang Sung,* given the purpose of the EAJA to vindicate rights, the court "would hardly attribute to Congress a purpose" to reduce deterrence with respect to the vindication of statutory rights but not constitutional rights.

The Statement accompanying the Model Rules for the Implementation of the EAJA prepared by the ACUS advised agencies to take " 'a broad interpretation of the reference to adjudications "under section 554" largely to avoid protracted debate about whether particular proceedings fall within its ambit.' " *Ruiz II,* 813 F.2d at 289 (quoting Agency Implementation, 46 Fed.Reg. 32,900, 32,901 (June 25, 1981)). The commentary identified the applicable dichotomy between "hearings as of right" and hearings "provided at the discretion of the government" and concluded that it was more consistent with the EAJA not to "cover proceedings of the latter type...." 46 Fed.Reg. at 32,901. In addition, "questions of coverage should turn on substance—the fact that a party has endured the burden and expense of a formal hearing—rather than technicalities." *Id.*

The court also noted that attorney fees are available under EAJA, 28 U.S.C. § 2412, to litigants who have prevailed on a constitutional claim in court.[5] *See, e.g., Ramon v. Soto,* 916 F.2d 1377, 1383 (9th Cir.1989) (claim for equitable relief under the fifth amendment constituted claim against the United States for purposes of the EAJA). In light of the express purpose of the EAJA, the court cannot reasonably assume that Congress intended attorney fees to be available for the vindication of a constitutional right in court but not available for the vindication of a constitutional right before an administrative agency in a hearing required to be conducted in accordance with § 554 of the APA.

The absence of any discussion of the distinction between constitutionally com-

---

federal regulations which required such proceedings to be "consistent with fundamental fairness." *Girard,* at 743 (citing 48 C.F.R. § 9.406–3(b)(1)).

If the hearing in *Girard* was constitutionally compelled, then not all hearings required by the Constitution are required to be conducted in accordance with the APA, despite the language of *Wong Yang Sung,* and therefore would not be "adjudications" as defined under § 554. For this reason, the court holds only that EAJA applies to constitutionally mandated hearings required to be conducted in accordance with § 554.

On the other hand, the hearing in *Girard* may not have been required by the Constitution. The Ninth Circuit described the hearings as "informal," noting that "debarment is within the inherent authority of contracting agencies." *Girard,* 930 F.2d at 741 (citing *Gonzalez v. Freeman,* 334 F.2d 570 (D.C.Cir.1964)). The right to procedural fairness need not be founded on the fact that a hearing is required by the Constitution for two reasons. First, in *Girard,* the regulations themselves provided for "fundamental fairness." Second, once an agency provides hearings, even when not compelled to do so, the agency may have an obligation to conduct those hearings in accordance with due process.

5. There are two provisions of the EAJA: 28 U.S.C. § 2412 entitles successful civil litigants to recover fees and costs against the government; 5 U.S.C. § 504 at issue here, applies to administrative adjudications.

pelled and statutorily required hearings in the legislative history does not suggest that Congress intended to exclude constitutionally compelled hearings from the ambit of the EAJA. As defendants note it is a "well-settled presumption that Congress understands the state of existing law when it legislates." *Bowen v. Massachusetts,* 487 U.S. 879, 896, 108 S.Ct. 2722, 2733, 101 L.Ed.2d 749 (1987). The court must assume that when Congress created the right to attorney's fees in "adjudication[s] under § 554" that it was aware of the Supreme Court's interpretation of § 554 in *Wong Yang Sung.* "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 109 S.Ct. 1981, 1991, 104 L.Ed.2d 557 (1989). Defendants proffer no authority indicating Congress intended to legislatively overrule the Supreme Court's interpretation of "required by statute" under the APA.

Notwithstanding the precedent within the Ninth Circuit, defendants urge the court to consider *Smedberg Mach. & Tool, Inc. v. Donovan,* 730 F.2d 1089, 1093 (7th Cir.1984). The Seventh Circuit interpreted the language "adjudication under section 554" of the EAJA as excluding constitutionally required adjudications, without discussion or consideration of *Wong Yang Sung,* because waivers of sovereign immunity "must be construed strictly in favor of the United States." *Id.* (citing *Fidelity Constr. v. United States,* 700 F.2d 1379 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983)). As noted above, the Ninth Circuit has determined that Congress intended the EAJA to be construed expansively, and thus the Seventh Circuit's reasoning rests on a principle of construction which the Ninth Circuit has rejected.

■ Defendants, however, further argue that Congress' failure to legislatively overrule *Smedberg* in 1985, when Congress overruled the holding of *Fidelity Construction,* or in 1986, when Congress extended the EAJA to cover proceedings under the Program Fraud Civil Remedies Act

of 1986, evidences Congress' acquiescence in the Seventh Circuit's interpretation. While Congress did not directly address *Smedberg* in 1985 when reenacting the EAJA, Congress "chastised the courts for our restrictive interpretation of EAJA" and instructed courts to take the " 'expansive view' " and apply the " 'broader meaning.' " *Abela,* 888 F.2d at 1263 (quoting H.Rep. No. 120, 99th Cong., 1st Sess. 8, 19, *reprinted in,* 1985 U.S.Code Cong. & Admin.News 137, 147). The court concludes that Congress in effect disapproved of the sort of "restrictive interpretation" the Seventh Circuit employed in *Smedberg.* The court concludes that Congress' failure to expressly overrule *Smedberg* is too slender a reed to support defendants' construction in light of the evidence of Congress' intent to provide for attorney fees in formal "hearings as of right" and in light of Congress' express invitation to construe the EAJA expansively. Therefore, the court finds that 43 C.F.R. § 4.603, as interpreted and applied to preclude attorney fee awards in hearings which are constitutionally mandated and required to be conducted in accordance with the procedures set forth in § 554 of the APA, is inconsistent with the statutory mandate and frustrates the policies Congress sought to implement and is therefore "arbitrary, capricious" and "not in accordance with law" within the meaning of 5 U.S.C. § 706.

4. Remand of the Tribe's Administrative Fee Petition to Agency.

■ Defendants assert that the Tribe's requested relief of remand to the agency for further consideration of its attorney fee petition is unavailable under 5 U.S.C. § 702 because the purpose of the remand would be to obtain "money damages," a remedy precluded by the APA. The Tribe's complaint is not a complaint for money damages. Only when the "equitable claim is spurious or 'the actual relief resulting from [review of the equitable claim] would be monetary' " will a court deny relief under § 702 of the APA. *Marshall Leasing v. United States,* 893 F.2d 1096, 1099 (9th Cir.1990) (quoting *Rowe v. United States,* 633 F.2d 799, 802 (9th Cir.1980), *cert. de-*

852

*nied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981)). The Tribe seeks a declaration that 43 C.F.R. § 4.603 as applied is invalid and remand of its fee petition for further consideration which may result in an award of attorney fees under the EAJA. The court is not considering the merits of the Tribe's administrative EAJA petition. The court's review of the Tribe's claim therefore will not result in a monetary award and thus constitutes the type of claim encompassed by 5 U.S.C. § 702.

IT IS THEREFORE ORDERED that defendants' motion to dismiss or motion for summary judgment on the ground that plaintiff's claim is time-barred, be and the same is, hereby denied.

IT IS FURTHER ORDERED that

1. Plaintiff's motion for summary judgment be, and the same is, hereby granted on the ground that no genuine issue as to any material fact exists and plaintiff is entitled to judgment as a matter of law;

2. 43 C.F.R. § 4.603 be, and the same is, hereby declared invalid insofar as the Department interprets and applies it to preclude awards of attorney fees in constitutionally compelled hearings required to be conducted in accordance with the procedures set forth in § 554 of the APA;

3. Plaintiff's administrative attorney fee petition is hereby remanded to the Board for further consideration consistent with this Opinion;

4. Plaintiff may apply to this court under the EAJA, 28 U.S.C. § 2412, for attorney fees and costs incurred in the instant action;

5. Defendants' counter-motion for summary judgment be, and the same is, hereby denied on the ground that they are not entitled to judgment as a matter of law.